## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:23-cv-00355

| | | |
|---|---|---|
| JEANNE LYLIANE GBETE, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) ) | **COLLECTIVE/CLASS ACTION COMPLAINT** |
| SAMPSON BLADEN OIL COMPANY, INC. D/B/A HAN-DEE HUGO'S, | ) ) ) | |
| *Defendant.* | ) ) ) | |

COME NOW, Jeanne Lyliane Gbete, ("Plaintiff") on behalf of herself and all others similarly situated, (collectively "Plaintiffs") by and through undersigned counsel, and hereby set forth this collective and class action for violations of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, against Defendant Sampson Bladen Oil Company, Inc. d/b/a Han-Dee Hugo's ("Defendant" or "SBOC"), and allege as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of Defendant's systemic, company-wide failure to compensate Plaintiffs for statutory overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for failing to comply with promises to compensate Plaintiffs for all hours worked and promised hourly and/or premium rates in violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, and in violation of statutory recordkeeping provisions. Plaintiffs consist of current and former employees who work as store managers working at North Carolina Han-Dee Hugo's gas stations and/or convenience stores (hereinafter referred to as "stores" and/or "stations")

on behalf of Defendant.

2.       Despite notifying Plaintiffs of their hourly rates and promised bonuses through paystubs consistent with the NCWHA, Plaintiff and others similarly situated were not paid for all hours worked as promised, promised hourly rates (exceeding the minimum wage rate of $7.25 per hour for hours less than forty (40) per week), promised bonuses, and they did not receive promised overtime premium rates at time and one-half for hours worked over forty (40) per week in violation of the NCWHA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) of the FLSA provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does *not* preempt the NCWHA.

3.       Throughout the relevant period, Defendant maintained a corporate policy of misclassifying Plaintiffs as overtime-exempt employees.

4.       Defendant was aware of Plaintiff working generally in excess of forty (40) hours per week. Defendant suffered or permitted, and in fact, required Plaintiffs to work hours in excess of forty (40) hours per week without being compensated time and a half (1.5) for their overtime work.

5.       Defendant's practice of failing to compensate Plaintiff for statutory overtime at time and one-half for hours over forty (40) violated Plaintiffs' rights under the FLSA's statutory minimum requirements.

6.       Plaintiff brings this action for violations of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant's North Carolina gas stations and/or convenience stores who worked as store managers or in similar positions within the past three (3) years preceding June 26, 2023 through the date of judgment or final disposition in this action, and who were misclassified as

2

exempt by Defendant, and, were not compensated for their hours above forty (40) per week during any workweek within three (3) years prior to the commencement of this action, through the present.

7.    Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

8.    Plaintiffs who elect to participate in this FLSA collective action seek compensation for the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

9.    Plaintiff also brings this action, on her own behalf, and as a representative of similarly situated current, former, or future store managers employed by Defendant in North Carolina gas stations, under the NCWHA.

10.    Plaintiff, who is a North Carolina resident and who worked for Defendant in North Carolina, asserts that she and the putative class, who work or worked for Defendant in North Carolina are entitled to compensation for all work performed for Defendant, whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than forty (40) per week, and/or the promised premium rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest,[1] and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

11.    Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> All individuals who were, are, or will be employed at Defendant's North Carolina gas stations and/or convenience stores who worked as store managers or in similar positions within the past two (2) years preceding June 27, 2023 through the date of

---

[1] Prejudgment interest is not available under the FLSA.

judgment or final disposition in this action, and despite notification of premium overtime eligibility given their non-exempt status, promise to be paid for all hours worked, hourly pay listed on paystubs, were misclassified as exempt, and were not compensated for all hours worked, including but not limited, promised straight time for hours less than forty (40) per week, bonuses, and premium overtime rates for hours above forty (40) per week, during any workweek within two (2) years prior to the commencement of this action, through the present.

12.     Accordingly, Plaintiffs seek all available relief for these claims, including, but not limited to, actual damages, liquidated damages, prejudgment interest, post-judgment interest, and attorney's fees and costs.

## PARTIES

13.     Plaintiff is an adult citizen and resident of the State of North Carolina, currently living in Wake County, North Carolina. She worked as a store manager for Defendant at their stores in North Carolina from approximately June 2016 until January 2022.

14.     Upon information and belief, Defendant is a corporation formed in 1939, incorporated in North Carolina and has its primary place of business located at 510 Commerce Street, Clinton, North Carolina 28328. According to its website, Defendant operates in a variety of petroleum industry businesses, including convenience stores, dealer service, fuel service, lubricant distribution, transport, and more.

15.     According to its website, Defendant operates approximately 120 gas stations, convenience stores, dealer services, etc., in North Carolina.

16.     Upon information and belief, Defendant has reported a total revenue of $250 million a year and employs over 700 employees.

17.     At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

18.     Upon information and belief, during the time period relevant to this action, Defendant was an employer, joint employer, or member of an integrated, common enterprise that employed Named and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of named and Putative Plaintiffs, and Defendant received the benefit of Plaintiffs' labor.

## JURISDICTION AND VENUE

19.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

20.     Defendant operates in North Carolina and maintains a primary business location at 510 Commerce St., Clinton, North Carolina 28328.

21.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant conducts business in multiple counties in North Carolina, including locations within this District such as Wake County.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducts business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

23.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

24.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

25.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

26.     The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate nor create confusion for a jury.

27.     At all times material to this action, Defendant acted, directly or indirectly, in the interest of an employer with respect to Named, and Putative Plaintiffs.

28.     At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

29.     At all times material to this action, Named and Putative Plaintiffs were employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

30.     At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

31.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.00 consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

32.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

33.     Plaintiff started her employment with Defendant in 2016 as a cashier. In 2018 Plaintiff was promoted to store manager, which she worked as until she left in January 2022.

34.     Defendant operates approximately 120 gas stations across North Carolina (hereinafter referred to as "stores" and/or "stations") with Han-Dee Hugo's acting as its

convenience store division.

35. Each station had a convenience store with multiple types of products including food, drinks, and supplies. The stations also have multiple gas pumps.

36. Convenience stores were supposed to be operated by multiple employees such as a cashier, an assistant manager, and a store manager whose duties included, but were not limited to preparing reports, maintaining inventory control, customer service, helping optimize store sales, changing trash cans, cleaning store and gas pump areas, stocking merchandise, food, and drinks. However, because Defendant's convenience stores were frequently short-staffed, Plaintiff typically worked by herself or had one full or part-time employee.

37. All stores were identified by a number. For example, during the relevant time period Plaintiff worked at store No. 96, which was located at 6927 Buffaloe Rd., Raleigh North Carolina, 27616.

38. Additionally, store managers routinely filled other positions that were not staffed at their stores, such as cashiers, especially when stores are frequently short-staffed.

39. Each station was in a district. There are between five (5) to ten (10) stores in each district.

40. Overall, Defendant has a total of seventeen (17) districts.

41. Store managers did not have any authority to fire employees. Instead, the authority to make termination decisions rested with the District Manager, the Regional Manager, and the Director of Operations.

42. Similarly, while store managers could participate in interviews, the ultimate authority to hire new employees rested with either the District Manager or another more senior employee.

7

43.     Towards the end of 2021, store managers began reporting to a Regional Manager. A Regional Manager oversaw all the stores in a large geographic region. The Regional Manager had the authority to fire employees, make final pay decisions for new hires, and overall make decisions for the management of the stores. Defendant employed two Regional Managers during the relevant time period.

## WAGE-RELATED FACTUAL ALLEGATIONS

**Wage-Related Allegations – Unpaid Hours Worked**

44.     During her time as store manager Plaintiff earned a salary of approximately $40,000.00 per year, plus any bonuses, though Plaintiff rarely, if ever, received her full bonuses.

45.     Plaintiff's 2021 paystubs listed an hourly rate of $21.40 per hour with her rate changing to $22.04 per hour in 2022. Plaintiff received between around three (3) percent pay increase each year.

46.     Defendant misclassified Plaintiff as exempt, even though the duties of store managers did not meet the necessary requirements to be classified as an exempted employee.

47.     Plaintiff's primary duty was not management. Specifically, store managers like Plaintiff did not supervise two full-time employees. They neither exercised judgment, discretion, nor had the ability to hire and fire employees.  Rather it was the responsibility of District Managers to oversee and manage all of the stores in their districts. Accordingly, the decision made regarding the operation of her store rested with her District Manager and Regional Manager. A store manager could not override a District Manager's decision regarding the operation of the store.

48.     As stated, Plaintiff often worked the store by herself. Thus, while each store was supposed to have other non-exempt employees such as assistant managers and cashiers, Plaintiff's store would often be understaffed. For example, Plaintiff worked approximately two (2) years without an assistant manager. Therefore, Plaintiff often had to work nearly all positions in

Defendant's stores. Moreover, if a store was open, and there was no one to cover a shift, it was the store manager's responsibility to work the store; thus, Plaintiff rarely had a day off.

49.     As a result of the consistent understaffing of her store, Plaintiff did not customarily and regularly oversee two (2) or more full-time employees.

50.     Even if non-exempt positions were filled, such employees would rarely work over forty (40) hours per week based on Defendant's policies and practices. Indeed, store managers could get in trouble for non-exempt employees working overtime. Yet, Defendant did not care how many hours Plaintiffs worked because Defendant misclassified them as exempt from overtime so that they would not be paid properly for all such hours worked.

51.     Bonuses were based on a store manager's performance, as well as the performance of their stores. Specifically, the bonuses were often based on the profitability of the stores in Plaintiff's district and whether the stores met Defendant's metrics.

52.     Other employees' overtime had to be approved by Defendant. However, such overtime requests were rarely approved in Plaintiff's store, and thus, she was often required to work by herself.

53.     Plaintiff worked approximately seven (7) days per week. By 2021, Plaintiff would typically clock in around 5:45 a.m. and clocked out at various times depending on what tasks needed to be resolved.

54.     Plaintiff also was expected to be on-call whenever she left the store. Specifically, Plaintiff would receive calls from store employees asking her questions or wanting help with something occurring in the store. Defendant store manager job description stated that a store manager is "on-call" twenty-four (24) hours per day, seven days per week.

55.     On average, Plaintiff worked approximately 100 hours per week on the clock,

which was reflected on timesheets. In other words, Plaintiffs were required to clock in/out just like other hourly non-exempt employees. Other employees who did not clock in/out were District Managers, Regional Managers, and Director of Operations. Due to the extensive hours worked and the demands of her job, Plaintiff rarely, if ever, took a lunch break.

56.     Indeed, the store manager's job description specifically dictated that a store manager was expected to work a minimum of forty-five (45) hours per week in their stores. However, since Defendant did not allow the assistant store managers to work any overtime, and because Defendant misclassified store managers as exempt, store managers worked excessive hours which were recorded as required by Defendant.

57.     For example, during the pay period November 12, 2021, through November 18, 2021, Plaintiff clocked in times reflected a total of 112.05 hours. Yet the hours were considered "regular hours." Therefore, because Plaintiff's hourly rate was $21.40 per hour, in 2021, rather than compensate Plaintiff her promised overtime premium time and one-half rate of $32.10 as non-exempt employees are promised to be paid, Plaintiff lost approximately $770.94 from that week alone.

58.     However, Plaintiff's paystubs only reflected forty (40) hours worked every week, without any overtime.

59.     Store managers were expected to clock in and out every day, until February 2021, when Director of Operations, Manly Clark, ("Clark") sent a companywide memorandum directed to store managers specifically, since they were the only employees misclassified as exempt from overtime, instructing them to not clock in or clock out. This memorandum occurred after Clark was made aware that store managers were repeatedly complaining that they were not compensated properly, and they worked excessive hours on a weekly basis.

60.     Overall, despite being required to track all hours worked, Plaintiff and other store managers were not paid any overtime.[2]

61.     Plaintiff was also promised an additional recurring bonus by Defendant to manage a group of storage units. Specifically, Plaintiff was responsible for checking and managing storage units that were located just behind her store. Plaintiff was told by her District Manager that she was supposed to receive a percentage of the revenue that was generated by these units. Despite Plaintiff fulfilling her obligations under the parties' mutual agreement, Defendants failed to compensate any of these promised payments. Indeed, one of Defendant's supervisors, Michael Creech, informed Plaintiff that Defendant should have compensated her for managing these storage units.

62.     Plaintiff left her position in January 2022 and was never paid her entire salary for that week. Instead, Plaintiff was paid hourly her last week and was only compensated for eight (8) hours.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

64.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed at Defendant's gas stations and/or convenience stores who worked as store managers or in similar positions, at any time within the three (3) years prior to the date of commencement of this action, through the present, and who

---

[2] While Plaintiff provides estimated minimum damages calculations based on the limited information currently available to Plaintiff for one week and maintains time records for the majority of the relevant time period, Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages on a class-wide basis for those similarly situated. Accordingly, the conservative damage estimate provided for Plaintiff for one week alone amounts to $770.94.

were not compensated for all hours worked and/or at the appropriate rate of one and one-half of their regular hourly rate for all hours worked in excess of forty (40) per week.

65.     The members of the proposed collective action, like Plaintiff, are employed as either store managers or have substantially similar job requirements, and pay provisions, and are subject to common practices, policies, or plans that fail to compensate her for all work performed at the appropriate rate.

66.     Upon information and belief, there are hundreds of Putative Plaintiffs and or similarly situated current and former employees that fall within the scope of the aforementioned FLSA class.

67.     The members of the proposed collective action are known to Defendant, are readily identifiable, and may be located through Defendant's records.

68.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and Putative Plaintiffs.

69.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

70.     Plaintiff consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is filed with the Court as Exhibit A to this Complaint.  As this case proceeds, it is likely that other individuals will file consent forms and join as opt-in plaintiffs.

71.     Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

72.     Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq.*

73.     Numerosity:  The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises more than one hundred (100) individuals.

74.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

   a.   Whether Defendant promised an hourly rate to putative Class Members listed on a paystub;

   b.   Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked less than forty (40) per week and in excess of forty (40) each week pursuant to § 95-25.6 and consistent with Defendant's paystubs as required pursuant to § 95-25.13; and

   c.   Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to,

straight time and promised premium overtime on their regular pay date, in violation of the NCWHA.

75. <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant compensation policies and practices affected all putative class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

76. <u>Adequacy of Representation</u>: Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiff and members of the proposed class. Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

77. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the

wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims were treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

78. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

79. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the proposed class.

**<u>COUNT ONE</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**Brought by Plaintiff on Behalf of Herself and All Similarly Situated Employees**

80. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

81. At all relevant times, Defendant has been and continues to be, an "employer"

engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

82.     At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Plaintiff, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

83.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.00.

84.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

85.     At all relevant times, Plaintiff was non-exempt, and a covered employee pursuant to the FLSA.

86.     At all relevant times, Defendant pursuant to its policies and practices, willfully failed and refused to comply and pay statutory overtime as required by the FLSA.

87.     Defendant improperly misclassified Plaintiffs as "exempt."

88.     Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over forty (40) hours, despite the fact that, upon information and belief, Defendant's knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts

constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

89.     As a result of Defendant's unlawful acts, Plaintiffs has been deprived of appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

90.     Plaintiff and Putative Plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of Herself and All Similarly Situated Employees**

91.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

92.     The class period for this cause of action is at least two (2) years from the date of the filing of this complaint.

93.     At all relevant times, Defendant has employed, and/or continues to employ, Putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

94.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

95.     Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2). Importantly, "[a]mbiguous policies and practices *shall* be construed against the employer and in favor of the employees." *See* 13 N.C. Admin. Code 12.0307. This language pursuant to the

17

NCWHA is more stringent than the FLSA and not found anywhere in the FLSA.

96.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022). This language pursuant to the NCWHA is more stringent than the FLSA and not found anywhere in the FLSA.

97.     Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022). This language pursuant to the NCWHA is more stringent than the FLSA and not found anywhere in the FLSA.

98.     Invariably, "[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established." *See* North Carolina Department of Labor, Promised Wages Including Wage Benefits, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

99.     This language pursuant to the NCWHA is more stringent than the FLSA and not found anywhere in the FLSA.

100.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage

rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does not preempt the NCWHA.

101.    Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

102.    Defendant intentionally refused to pay all wages due, including wages for all hours worked, as set forth in the preceding paragraphs of this Complaint, to Plaintiff and putative class members in violation of the NCWHA.

103.    Defendant was aware that Plaintiff and Putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and premium overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate. Additionally, the NCWHA provides for prejudgment interest for every week in which such earned, accrued, and unpaid promised wages are due. Such a remedy is not available under the FLSA.

104.    Defendant employed Plaintiff and Putative Plaintiffs within the State of North Carolina.

105.    At all relevant times Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, and at

the appropriate promised overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek pursuant to the NCWHA.

106.    Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat § 95-25.6.

107.    As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

108.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat.  N.C. Gen. Stat. § 95-25.22(a1).

109.    Due to Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all those similarly situated, prays that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Plaintiff as representative of all those similarly situated under the FLSA collective action;

2.    Issue an Order certifying this action as a class action under the NCWHA, and designate Plaintiff as representative on behalf of all those similarly situated under the NCWHA class;

3.      Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.      Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), as applicable;

5.      Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.      Award Plaintiff's interest at the prevailing rate, as provided under N.C. Gen. Stat. § 95-243(c);

7.      Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
*Attorneys for Plaintiffs*