IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-355-BO-KS

JEANNE LYLIANE GBETE, on behalf of )
herself and all others similarly situated, )
                                      )
             Plaintiff, )
                                        )
      v. )                         O R D E R
                                        )
SAMPSON BLADEN OIL COMPANY, )
INC. d/b/a/ Han-Dee Hugo's, )
                                        )
            Defendant. )

This cause comes before the Court on plaintiff's amended motion for class certification and appointment of class counsel under Fed. R. Civ. P. 23. [DE 51]. Defendant has responded, plaintiff has replied, and, in this posture, the motion is ripe for disposition. For the reasons that follow, plaintiff's amended motion is denied.

## BACKGROUND

The Court incorporates by reference as if fully set forth herein its discussion of the background of this action set out in its order entered September 26, 2025. [DE 49]. In that order, the Court granted plaintiff's motion for conditional certification of a collective action under the Fair Labor Standards Act and denied without prejudice to refiling plaintiff's motion for class certification under Fed. R. Civ. P. 23. *Id.* Plaintiff has filed the instant amended motion in which she seeks class certification using revised class definitions in light of the Fourth Circuit's decision in *Stafford v. Bojangles Restaurants, Inc*, 123 F.4th 671 (4th Cir. 2024). Plaintiff seeks certification of a class with the following class definitions:

**Proposed Misclassified Store Manager Class:** All individuals who were, are, or will be employed at Defendant SBOC or Han-Dee Hugo's North Carolina gas stations and/or convenience stores who worked as store managers or in similar positions within the past two (2) years preceding June 26, 2023 through the date of judgment or final disposition in this action, who were mis-classified as salaried, overtime-exempt, because they had no hiring/firing authority or were subject to deductions for short days worked thereby treated as hourly employees, during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

**Proposed Overtime Shaving Class (Misclassified Store Managers):** All individuals who were, are, or will be employed at Defendant SBOC or Han-Dee Hugo's North Carolina gas stations and/or convenience stores who worked as store managers or in similar positions within the past two (2) years preceding June 26, 2023 through the date of judgment or final disposition in this action, who were misclassified as salaried overtime-exempt because they had no hiring/firing authority or were subject to deductions for short days worked thereby treated as hourly employees, and time records through February 2022 demonstrate they worked in excess of 40 hours per week but pay records demonstrate they were not paid earned and accruing promised overtime wages consistent with Defendant's handbook (for non-exempt hourly employees) during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

**Proposed Overtime Off the Clock ("OTC") Class (Misclassified Store Managers):** All individuals who were, are, or will be employed at Defendant SBOC or Han-Dee Hugo's North Carolina gas stations and/or convenience stores who worked as store managers within the past two (2) years preceding June 26, 2023 through the date of judgment or final disposition in this action, who were misclassified as salaried overtime-exempt because they had no hiring/firing authority or were subject to deductions for short days worked thereby treated as hourly employees, and who work(ed) a minimum of forty-five (45) hours per week consistent with Defendant's handbook but were/are not allowed to clock in and clock out to report their actual hours worked post-February 2022 and thus not paid their earned and accruing promised overtime wages consistent with Defendant's handbook during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

**Proposed Straight-Time Shaving Class (Misclassified Store Managers):** All individuals who were, are, or will be employed at Defendant SBOC or Han-Dee Hugo's North Carolina gas stations and/or convenience stores who worked as store managers within the past two (2) years preceding June 26, 2023 through the date of judgment or final disposition in this action, who were misclassified as salaried overtime-exempt because they had no hiring/firing authority or were subject to deductions for short days worked thereby treated as hourly employees, and during pre and post February 2022, pay records demonstrate they were not paid earned and accruing promised straight-time wages for hour worked either up to or in excess of

2

40 hours per week consistent with Defendant's handbook (non-exempt hourly employees) during at least one (1) workweek within two (2) years prior to the commencement of this action, through the present.

Defendant opposes plaintiff's amended motion, arguing that her revised class definitions fail to cure the defects raised by the *Stafford* decision and that, instead of revising the single class definition previously presented, plaintiff has now proffered four new class definitions, or one class definition and three subclasses, for the Court's consideration.[1]

## DISCUSSION

Federal Rule of Civil Procedure 23 governs class certification, and it "holds plaintiffs to a higher bar than a pleading standard." *Stafford*, 123 F.4th at 679. "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "Under Rule 23(a), the party seeking certification must demonstrate, first, that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Id.* at 345 (quoting Fed. R. Civ. P. 23(a)). These requirements are often described as numerosity, commonality, typicality, and adequacy. The commonality, typicality, and adequacy requirements tend to merge. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). A plaintiff must also demonstrate that she satisfies one of the subsections of Rule 23(b).

Where, as here, certification is sought under Rule 23(b)(3), the plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting

---

[1] The Court does not take issue with plaintiff filing an amended class definition using subclasses, which it recognizes are a tool that can be used to "achieve the proper specificity of a challenged policy[.]" *Stafford*, 123 F4th at 683.

3

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The pertinent factors to consider under Rule 23(b)(3) include the difficulties in managing a class action, the desirability of concentrating the claims in a particular forum, the extent and nature of litigation already begun by or against the class members, and the class members' interests in individually controlling the prosecution of their claims or defenses. *Id.* 23(b)(3)(A)-(D).

The plaintiff bears the burden to demonstrate that class certification is warranted. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). While a court does not test the merits of the plaintiff's case, it must nonetheless "rigorously examine whether [the] plaintiffs have met the prerequisites of Rule 23[] at the certification stage, an analysis that will often overlap with the merits of a claim." *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015). Moreover, the definition of a Rule 23 class must be clear, and "overly general class definitions" "run afoul of Rule 23's core tenets." *Stafford*, 123 F.4th at 680. If subclasses are used, each subclass must meet the requirements of Rule 23 individually. *Id.* at 683.

In addition to the Rule 23 express requirements, the Fourth Circuit has implicitly recognized a requirement that the class be ascertainable or readily identifiable. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This means that class members are readily identifiable based on objective criteria. *Id.* If individualized fact-finding is required in order to identify members of the class, certification is not warranted. *Id.*

Plaintiff's proposed Misclassified Store Manager class definition fails the threshold requirement of ascertainability. Plaintiff's Misclassified Store Manager class definition includes store managers who were misclassified as salaried, overtime-exempt, because (1) they had no hiring/firing authority or (2) they were subject to deductions for short days worked and thereby

4

treated as hourly employees. Thus, plaintiff has revised her proposed class from including *all* store managers to including those store managers who were misclassified because one of the limiting factors listed is present. The Court considers each limiting factor in turn.

As to the first limiting factor, the Court agrees with defendant that determining whether a store manager is a member of the class based on whether he or she had hiring and/or firing authority will require individual fact-finding in order to ascertain the members of the class. The record in this case supports this determination. For example, plaintiff has testified that, despite the store manager job duties outlined in defendant's handbook, she did not hire or fire employees or meaningfully participate in the hiring or firing process. [DE 38-13] Gbete Depo. at 171-176;[2] *see also* [DE 38-20] Hill Decl. at 7. Defendant has proffered evidence from store managers who state they have full authority to hire and fire employees. *See, e.g.,* [DE 44-7] Jallow Decl. at 3-4; [DE 44-19] Strycharz Decl. at 3-5.[3] Plaintiff has not demonstrated any way to ascertain whether a store manager had or has hiring and/or firing authority using objective criteria. Accordingly, the first limiting factor cannot be used to define the Misclassified Store Manager class.

The second limiting factor, whether store managers were subject to deductions for short days worked and thereby treated as hourly employees (also known as docking), also fails the ascertainability test. Plaintiff contends that deductions for short days worked were pursuant to a company-wide policy requiring store managers to use paid time off or make-up the time absent for partial day absences. In support, plaintiff cites the deposition of Manly Clark. [DE 38-12] Clark

---

[2] Page number citations refer to the page numbers generated by CM/ECF.

[3] In light of the different burdens, the Court considers defendant's "happy camper" declarations in deciding whether class certification is appropriate, though it declined to give them weight at the FLSA conditional certification stage. *See, e.g., Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 678 (E.D. Va. 2022) (noting "happy camper" declarations not entitled to weight in FLSA certification).

Depo. at 16-17; *see also Shockley v. City of Newport News*, 997 F.2d 18, 22 (4th Cir. 1993) (reductions in pay for part-day absences "defeat any claim that the employee was paid on a salary basis" under the FMLA); *Freudenberg v. Servcon, LLC*, No. 3:23-CV-00068-SCR, 2024 WL 4341721, at *10 (W.D.N.C. Sept. 27, 2024) (same).

First, plaintiff does not allege in her complaint that docking for short days is a theory of recovery. *See* [DE 1]. Second, the portions of Clark's deposition relied upon by plaintiff do concern use of paid time off, but Clark's testimony does not appear to clearly establish that store managers were subject to docking as plaintiff contends. *See* [DE 38-12] Clark Depo. at 16-17 (discussing use of paid time off for partial absences under certain hypothetical circumstances). While plaintiff has also proffered additional evidence in support of this contention, *see* [DE 38-19] Hill Decl. at 11 (taking a few hours off to go to the doctor required use of paid time off or resulted in deductions from weekly pay); [DE 39-22] Shank Decl. at 7 (same),[4] plaintiff has not proffered evidence that *she* was subjected to docking for short days. Though this likely goes to typicality rather than ascertainability, *see Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006), it nonetheless underscores that individual inquiries into which store managers were allegedly misclassified based on docking will be required to determine who is a member of the Misclassified Store Manager class. Plaintiff has not otherwise proffered any evidence or argument which would show that identifying class members on the basis of docking could be accomplished using objective, rather than subjective information. Plaintiff's Misclassified Store Manager class fails the threshold ascertainability test. As each subclass is premised first on being a member of the Misclassified Store Manager class, each subclass necessarily fails the threshold test as well.

---

[4] Defendant has proffered the declaration of its Safety and Human Resources Director, which states that defendant does not dock store manager pay for partial-day absences, only for full-day absences. [DE 44-3] Mason Decl. at 4.

6

Even assuming, *arguendo*, that plaintiff's amended class and subclass definitions passed the threshold inquiry, they fail to meet the Rule 23(b)(3) requirements under *Stafford* for similar reasons. Rule 23(b)(3) requires first that "questions of law or fact common to the class members predominate over any questions affecting only individual members . . .." Fed. R. Civ. P. 23(b)(3).

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453–54 (cleaned up, citations omitted).

Plaintiff has identified six questions of law or fact she contends are common to the proposed class and subclasses: whether defendant treated store managers as *bona fide* salaried exempt or as hourly employees; whether defendant failed to comply with its promise to pay store managers for all hours worked per its handbook; whether defendant failed to pay store managers all earned and accruing straight time and/or hourly rates as listed on paystubs; whether defendant failed to compensate store managers at the earned, accrued, and/or promised rate for all hours worked less than forty and more than forty each week as required by N.C. Gen. Stat. §§ 95-25.6 and 95-25.13; whether defendant failed to pay store managers for all of their earned, accrued, and/or promised wages, including but not limited to straight time and promised premium overtime on their regular pay date, and whether, due to defendant's failures, it owes liquidated damages and prejudgment interest. [DE 52] at 18-19.

7

As with plaintiff's amended class definitions, each of the six common questions identified by plaintiff is an outgrowth of the first – whether defendant treated its store managers as hourly employees or as *bona fide* salaried exempt employees. And the same individualized inquiry problem persists at this stage of the Rule 23 analysis. To determine whether a putative class member was treated as an hourly employee or a salaried exempt employee requires examination of individual job performance and expectations of the putative class member, potentially unique to each store manager's location and experience. For example, Meredith French worked for defendant as a store manager at Store #57 but resigned due to the excessive workload and long hours. [DE 38-18]. As a store manager, Ms. French often worked seven days per week and regularly worked double shifts, or from 6:00 a.m. to 12:00 p.m. and then 2:00 p.m. to 12:00 p.m., two days per week, in excess of the forty-five-hour work week outlined in defendant's handbook. Ms. French's district manager, not Ms. French, made hiring decisions for her store. [DE 38-18] French Decl. Deaudra Martin works for defendant as a store manager at Store #211 and typically works forty to forty-five hours per week. She does not regularly work on weekends or at night, but will cover a shift during those times when needed. Ms. Martin has total control over the hiring process at her store and has never had to use paid time off to attend appointments or errands. [DE 44-13] Martin Decl. As these declarations illustrate, the experiences of defendant's store managers appears to vary greatly depending on store location and district manager. Whether the putative class members were primarily performing *bona fide* managerial duties pursuant to defendant's policies thus involves a number of factual inquiries.

As defendant argues, the record before the Court supports that some store managers never engaged in the type of work or the number of hours of work about which plaintiff complains. The fact that some other store managers did engage in cashier-level work and worked long hours does

8

not support the presence of a question susceptible of class-wide proof or a question where the same evidence will support each putative class members' prima facie case. *Tyson Foods*, 577 U.S. at 453. This Court is obligated to examine whether the differences between the putative class members will impede discovery of common answers. *Stafford*, 124 F.4th at 680 (quoting *Brown*, 785 F.3d at 909). The Court is persuaded that the record establishes too many differences between the putative class members to allow for common answers based upon plaintiff's amended definitions. At bottom, and despite plaintiff's use of proposed subclasses to narrow the field, plaintiff's proposed class remains based on a generalized theory that defendant treated its store managers as hourly employees but classified them as managerial. This is precisely the type of broadly asserted harm based on classification status that *Stafford* cautioned against in the Rule 23 context. *Stafford*, 123 F.4th at 681.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp.*, 569 U.S. at 33 (citation omitted). Plaintiff has failed to satisfy her burden to show that this case presents "an exception to the usual rule" under the applicable standards. *Id.*

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's amended motion for class certification and appointment of class counsel [DE 51] is DENIED.

SO ORDERED, this **28** day of April 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9