IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:23-CV-00355-BO-KS

| | |
|---|---|
| JEANNE LYLIANE GBETE, on behalf of herself and all others similarly situated, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| SAMPSON BLADEN OIL COMPANY, INC. D/B/A HAN-DEE HUGO'S, | ) |
| *Defendant*. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ........................................................................................ 1

III. STANDARD OF REVIEW ........................................................................................ 1

IV. ARGUMENT ........................................................................................ 2

A. Plaintiffs are Entitled to Summary Judgment on their FLSA Claims ........................ 2

B. Defendant Cannot Establish that Plaintiffs were Exempt from the FLSA ............. 2

1. Plaintiffs Do Not Meet the Salary Basis Test ............................................ 3

i. Potential or Actual Salary Reductions for Part-Day Absences or Tardiness Negates the Salary Basis Test ..................... 3

ii. Defendant's Practice to Use Plaintiffs' Sick Leave or Vacation Leave to Cover Part-Day Absences Negates the Salary Basis Test ............................................................... 7

iii. Defendant's Practice of Requiring Employees to Work a Minimum Number of Hours Per Week Also Defeats the Salary Basis Requirement ............................................................ 8

2. Plaintiffs Did Not Customarily Direct the Work of Two or More Employees ........................................................................................ 9

3. Plaintiffs' Primary Duties were Not Management .................................... 10

4. Plaintiffs Did Not Have the Authority to Hire and Fire ............................ 12

V. CONCLUSION ........................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*,
519 U.S. 452 (1997) ............ 3

*Brewer v. Mbroh Eng'g, Inc.*,
811 F. Supp. 3d 790 (N.D. Tex. 2025) ............ 8

*Calderon v. GEICO Gen. Ins. Co.*,
809 F.3d 111 (4th Cir. 2015) ............ 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............ 1

*Cook v. Greenwood Hosp. Mgmt., LLC*,
704 F.Supp.3d 874 (E.D. Wis. 2023) ............ 4

*Corning Glass Works v. Brennan*,
417 U.S. 188 (1974) ............ 1, 5

*E.M.D. Sales, Inc. v. Carrera*,
604 U.S. 45 (2025) ............ 1

*Grace v. Family Dollar Stores, Inc.*,
845 F.Supp.2d 653 (W.D.N.C. 2012) ............ 13

*Hawks v. City of Newport News,*
707 F.Supp. 212 (E.D.Va.1988) ............ 4

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39 (2023) ............ 8

*Hilbert v. D.C., a Mun. Corp.*,
23 F.3d 429 (D.C. Cir. 1994) ............ 7

*Icicle Seafoods, Inc. v. Worthington,*
475 U.S. 709 (1986) ............ 11

*In re Family Dollar FLSA Litig.*,
637 F.3d 508 (4th Cir. 2011) ............ 3, 9, 12

*Kinney v. D.C.*,
994 F.2d 6 (D.C. Cir. 1993) ............ 7

*Knecht v. City of Redwood City,*
683 F.Supp. 1307 (N.D.Cal.1987) ............ 4

*Lucas v. Burnley*, 879 F.2d 1240
(4th Cir. 1989) ... 2

*Martin v. Malcom Pirnie Inc.,*
949 F.2d 611 (2d Cir. 1991) ... 8

*Oral v. Aydin Corp*.,
No. 98-CV-6394, 2001 WL 1735063 (E.D. Pa. Oct. 31, 2001) ... 7

*Persons v. City of Gresham,*
704 F.Supp. 191 (D.Or.1988) ... 4

*Pollard v. GPM Investments, LLC,*
No. 3:10-CV-115, 2011 WL 864329 (E.D. Va. Mar. 10, 2011) ... 13

*Shockley v. City of Newport News*,
997 F.2d 18 (4th Cir. 1993) ... 3, 10, 11

*Smith v. AutoZone, Inc.*,
No. 7:15-cv-00183, 2016 WL 4718184 (W.D. Va. May 13, 2016) ... 14

*Szabo v. Muncy Indus., LLC*,
661 F.Supp.3d 337 (M.D. Pa. 2023) ... 9

*Walsh v. Sofia & Gicelle, Inc.*,
No. CV TDC-19-0934, 2021 WL 3472649 (D. Md. Aug. 5, 2021) ... 10

*Whitmore v. Port Authority of New York & New Jersey,*
907 F.2d 20 (2d Cir.1990) ... 4

*Wolfslayer v. Ikon Off. Sols., Inc.,*
No. CIV.A. 03-6709, 2004 WL 2536833 (E.D. Pa. Nov. 8, 2004) ... 3, 7

**Statutes**

29 C.F.R. § 213 ... 2

29 U.S.C. § 207 ... 2

**Rules**

29 C.F.R. § 541.100 ... 3

29 C.F.R. § 541.104 ... 9

29 C.F.R. § 541.106 ... 11

29 C.F.R. § 541.118 ... 3, 7

29 C.F.R. § 541.602 .......... 3

Fed. R. Civ. P. 56 .......... 1, 2

## I. INTRODUCTION

Defendant's answer and the evidentiary record demonstrate that Plaintiffs are entitled to judgment as a matter of law as to every element of their FLSA claim, with the exception of willfulness, which is a disputed issue of material fact, and damages to be proved at trial. That Defendant is covered by the FLSA, that it did not pay Plaintiffs overtime, that it knew Plaintiffs were working hours over 40 per workweek, and that Plaintiffs worked in excess of forty hours, in at least one workweek, are not materially in dispute and judgment may be entered on those elements. While Defendant never pled an exemption from the Fair Labor Standards Act ("FLSA") as an affirmative defense, *see* Dkt. 13, 13-16, Defendant cannot establish that Plaintiffs were exempt from the FLSA as a matter of law. Thus, Plaintiffs are entitled to judgment as a matter of law and only willfulness and the amount of damages are issues reserved for trial.

## II. STATEMENT OF FACTS

The undisputed material facts are set out in Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), filed with this memorandum, and are incorporated here. *See* Local Civ. R. 56.1(c).

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendant bears the burden to prove an FLSA exemption. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48, 54 (2025); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974). Rule 56 permits

Plaintiffs to establish the elements of their claim through Defendant's "admissions" and "interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). A party is bound by the admissions in its pleadings. *See Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989).

## IV. ARGUMENT

### A. Plaintiffs are Entitled to Summary Judgment on their FLSA Claims

The FLSA requires an employer to pay overtime, at one and one-half times the regular rate, for hours worked over forty in a workweek by an employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Section 213(a)(1) exempts "any employee employed in a bona fide executive . . . capacity." *Id.* § 213(a)(1).

Defendant functionally admits enterprise coverage, Plaintiffs' LR 56.1 Statement of Undisputed Material Facts ("SUMF"), ¶¶ 1-6, admits that it employed Named Plaintiff and Opt-In Plaintiffs as store managers, SUMF ¶ 7, and admits that it "did not pay overtime to" Plaintiffs. Dkt. 113, ¶ 27. Each Plaintiff worked over 40 hours in at least one workweek and did so regularly. SUMF ¶ 10. Defendant knew about the pattern and practice of Plaintiffs working over 40 hours per week. *Id.* at ¶¶ 10-11. The amount of overtime Plaintiffs worked is a damages question for trial. However, on the three preceding elements the Court may grant summary judgment to narrow the issues for trial.

### B. Defendant Cannot Establish that Plaintiffs were Exempt from the FLSA

Defendant is unable to carry its burden as to the executive exemption and Plaintiffs are entitled to summary judgment on this issue. An employee is exempt from the overtime requirements of the FLSA if "(1) she is compensated at a rate of at least [$684]; (2) her primary duty is management; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status

of other employees are given particular weight.*" In re Family Dollar FLSA Litig.*, 637 F.3d 508, 513 (4th Cir. 2011); 29 C.F.R. § 541.100(a). All four elements must be met for the exemption to apply. *Id.* The record contains no evidence from which a reasonable factfinder could find that Plaintiffs meet all of the factors to fall under the executive exemption, and thus summary judgment for Plaintiffs is appropriate. *See Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015).

1. Plaintiffs Do Not Meet the Salary Basis Test

"An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602 (formerly § 541.118); *see Auer v. Robbins*, 519 U.S. 452, 455 (1997). "Although the regulations allow employers to reduce a salaried employee's pay 'when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident,' 29 C.F.R. § 541.118(a)(2), they do not allow reductions for part-day absences." *Shockley v. City of Newport News*, 997 F.2d 18, 24–25 (4th Cir. 1993). "Such reductions defeat any claim that the employee was paid on a salary basis." *Id.*[1]

*i. Potential or Actual Salary Reductions for Part-Day Absences or Tardiness Negates the Salary Basis Test*

[1] "There is a difference between partial day deductions from base pay and partial day reductions of fringe benefits, such as vacation or sick leave time." *Wolfslayer v. Ikon Off. Sols., Inc.,* No. CIV.A. 03-6709, 2004 WL 2536833, at *6 (E.D. Pa. Nov. 8, 2004). Where an employer requires employees to use sick or vacation leave to cover partial day absences or be docked pay, employees are not paid on a salary basis under FLSA regulations.

In *Shockley*, the Fourth Circuit, in analyzing disciplinary reductions in pay, held that where reductions in pay were based on the quantity and quality of an employee's work, such reductions violated the FLSA.[2] *Id*. at 25; *see also* 29 C.F.R. § 541.118(a)(5); *see also e.g., Klein v. Rush–Presbyterian–St. Lukes Medical Ctr.,* 990 F.2d 279, 285-287 (7th Cir.1993) (holding that because the nurse's pay was subject to reduction for tardiness as well as for rude, abrupt, and irritable behavior to fellow staff members, she was not paid on a salary basis); *see also Pautlitz v. City of Naperville,* 781 F.Supp. 1368, 1372 (N.D.Ill.1992) (disciplinary reductions for accepting gratuities).

Merely being subject to a policy of docking negates the exemption. *Cook v. Greenwood Hosp. Mgmt., LLC*, 704 F. Supp. 3d 874, 878 (E.D. Wis. 2023) ("Even if the employee's salary is not actually reduced, she may nevertheless lose exempt status if an employment policy creates a 'significant likelihood' of such deductions.") (quoting *Auer*, 519 U.S. at 461); *accord Klein,* 990 F.2d at 285-287; *Whitmore v. Port Authority of New York & New Jersey,* 907 F.2d 20, 21 (2d Cir.1990); *Hawks v. City of Newport News,* 707 F.Supp. 212, 214–15 (E.D.Va.1988); *Persons v. City of Gresham,* 704 F.Supp. 191, 194 (D.Or.1988) (same); *Knecht v. City of Redwood City,* 683 F.Supp. 1307, 1311 (N.D.Cal.1987) (same). "Most courts that have addressed the issue have agreed that if an employer has a policy of reducing an employee's compensation for fractions of days that the employee is absent from work, then the employer may not invoke the 'bona fide executive' exemption with regard to that employee." *Martin*, 949 F.2d at 615 (collecting cases).

---

[2] Similarly, in *Service Employees International Union, Local 102 v. County of San Diego*, plaintiffs were subject to discipline if they left work "for even a few hours without seeking and obtaining permission." 784 F.Supp. 1503, 1508 (S.D.Cal.1992) *rev'd on other grounds*, 60 F.3d 1346, 1354 (9th Cir. 1994).

Indeed, Defendant's policy of threatening to dock[3] Plaintiffs' pay is well-attested. SUMF ¶¶ 18-19; *e.g.*, Ex. MM, De Ligne's Interrogatory Responses at Response to Interrogatory No. 8, p. 11 ("Beth Bird, his District Manager at the time, told him that his pay would be deducted, if he did not work the full forty-five (45) minimum required hours."); Dkt. 38-22, ¶¶ 25-26 Declaration of Diana Shank ("I was advised that if I came in late or left early, I needed to cover those short days with either vacation or sick time. . . . .In other words, the only way I could even take a few hours off from work to go to the doctor, I need to give up vacation and/or sick leave. Otherwise, SBOC would 'dock' or deduct from my weekly salary."); Ex. O, Seagroves Depo. at 101:15-16 ("[My District Manager] would say that if I continued to leave early, HR would be able to dock my pay."). Defendant's 30(b)(6) witness himself testified to the potential for half-day docking. Dkt. 38-12, Clark Depo., at 61:03-14. Employment records demonstrate that at least three Plaintiffs experienced salary reductions likely attributable to not working every day. *See* Ex. CC, M. Williams Paystubs, 8 (paid for only 32 hours), 9 (paid for only 24 hours); Ex. GG, Hill Paystub, 9 (paid for only 6 hours), 12 (paid for only 32 hours), 13 (same); Ex. LL, O'Donnell Paystub, 2 (paid for only 24 hours). Many others experienced docking of their vacation or sick leave for partial day absences, *e.g.,* SUMF ¶¶ 18-20, and testified to the practice of using this leave time or being docked. *E.g.*, Ex. E, T. Williams Depo. at 44:15-16 ("There [were] times where I would have to leave early, and I was docked on my pay for it."); Ex. O, Seagroves Depo. at 101:15-16.

[3] Defendant suggests that this theory of docking was not pled in Plaintiffs' complaint. First, the Complaint properly alleges "Defendant improperly misclassified Plaintiffs as 'exempt.'" Dkt. 1, P. 87. As an affirmative defense, Defendant must plead an exemption from the FLSA, not Plaintiffs. *See Corning Glass Works*, 417 U.S. at 196-97. The practice of docking employees improperly and in violation of the salary basis test is an avenue of proof for Plaintiffs' well-pled allegations that Defendant misclassified Plaintiffs as exempt. Plaintiffs are not liable for Defendant's failure to properly raise its affirmative defense.

Defendant's practice of disciplining store managers for being late is documented and attested to as well. *See* Ex. II, Jobe Disciplinary Report; Ex. JJ, Harris Disciplinary Report; SUMF ¶¶ 18-19. Defendant's atmosphere of pressure ensured Plaintiffs worked while sick, injured, and in dangerous conditions. SUMF ¶ 21.

Furthermore, Plaintiffs' paystubs and time records show significant irregularities corroborating this policy. Many Plaintiffs were subject to half-day docking of vacation or sick leave. SUMF ¶¶ 18-19; *e.g.*, Ex. NN, Shank Paystub Excerpt, 2 (half-day vacation); Ex. BB, Brown Paystub Excerpts, 6-7 (same); Ex. DD, R. Bah Paystub Excerpts, 2 (same). This was true even when records show that Plaintiffs worked that day. *E.g.*, Ex. AA, Bah Timesheet, Entries 11.8.2021 (4 hours of sick leave despite working 3.47 hours on the same day); Ex. T, Shank Timesheet Excerpts, Entries 1.25.2021 (4 hours of sick leave despite working 3.83 hours); Ex. U, Stokley Timesheet Excerpts, Entry 4.22.2020 (4 hours of sick leave despite working 3.65 hours). Additional evidence demonstrates that Defendant's records and pay practices did not match Plaintiffs' recorded hours. SUMF ¶¶ 18-19; *e.g.*, Ex. X, Norman Timesheet, Entries 10.15.2021 through 10.21.2021 (OH record shows 32 hours despite working 40.88 hours on the record); Ex. V, O'Donnell Timesheet, Entries 10.9.2020 through 10.16.2020 (OH record shows 36 hours despite 42.65 hours of work on the record). Plaintiffs could also be subject to actual, if unspecified, salary reductions. Ex. CC, M. Williams Paystubs, 8 (paid for only 32 hours), 9 (paid for only 24 hours); Ex. GG, Hill Paystub, 9 (paid for only 6 hours), 12 (paid for only 32 hours), 13 (same); Ex. LL, O'Donnell Paystub, 2 (paid for only 24 hours).

Taken together, Plaintiffs testimony and pay records, as well as Defendant's admissions, clearly demonstrate that Plaintiffs were "subject to" an unlawful salary deduction policy and were

treated as hourly employees. Defendant is unable to rely on the executive exemption on this basis alone.

*ii. Defendant's Practice to Use Plaintiffs' Sick Leave or Vacation Leave to Cover Part-Day Absences Negates the Salary Basis Test*

Additionally, "[t]here is a difference between partial day deductions from base pay and partial day reductions of fringe benefits, such as vacation or sick leave time." *Wolfslayer v. Ikon Off. Sols., Inc.,* No. CIV.A. 03-6709, 2004 WL 2536833, at *6 (E.D. Pa. Nov. 8, 2004). Where an employer requires employees to use sick or vacation leave to cover partial day absences or be docked pay, employees are not paid on a salary basis under FLSA regulations. *See id.*;[4] *Oral v. Aydin Corp*., No. 98-CV-6394, 2001 WL 1735063, at *7 (E.D. Pa. Oct. 31, 2001) (where "opt-in plaintiffs did face a threat that their pay would be docked for a partial day absence unless they used sick or vacation leave to cover the absence[, s]uch a practice is inconsistent with the definition of what it means to be a salaried employee under 29 C.F.R. § 541.118(a)."). "Payment on salary basis is thought to identify executive [] personnel precisely because it indicates employees who are given discretion in managing their time and their activities and . . . are not answerable merely for the number of hours worked. . . ." *Hilbert v. D.C., a Mun. Corp*., 23 F.3d 429, 432 (D.C. Cir. 1994) (quoting *Kinney v. D.C.*, 994 F.2d 6, 11 (D.C. Cir. 1993)).

Many Plaintiffs testified to Defendant's policy of threatening to dock their salaries unless they used sick or vacation days for partial absences. SUMF ¶¶ 18-19*; see also* Clark Depo at 61:03-14 (SBOC's corporate witness testifying that if someone has to take four hours or more than half day for a planned doctor's visit, they must dip into their vacation or their sick leave to cover the

[4] "However, where the employment policy directly reduces employee sick or vacation leave for partial day absences, but does not dock, or threaten to dock, employees' pay for those partial day absences, employees are paid on a salary basis." *Wolfslayer*, 2004 WL 2536833, at *6; *cf.* SUMF 18-19 (Plaintiffs' managers threatening to dock pay).

time or make up the time in the same week). Record evidence demonstrates that the half-day docking was frequent and many Plaintiffs were docked vacation and sick leave as a consequence of being late or leaving early, even when they worked well above forty hours that week. SUMF 18-19. In fact, Plaintiffs could be subject to discipline and write-up if they arrived even less than half-an-hour late to their store. SUMF ¶ 17; *e.g.*, Ex. II, Jobe Discipline Write-Up, 2 (Jobe disciplined for arriving at her store at 9:13am); Ex. JJ, Harris Discipline Write-Up, 2 (Harris disciplined for opening her store at 5:23am instead of 5am). This documented practice undermines Defendant's position that "we just care about whether [Plaintiffs are] performing their job duties and not necessarily when and what times they are at the store." Dkt. 38-12, Clark Depo. at 41:14-15. This simply could not be the case when Defendant made Plaintiffs take leave if they left early. *E.g.*, Ex. T, Shank Timesheet Excerpts, Entries 1.25.2021 (4 hours of sick leave despite working 3.83 hours). Thus, Defendant's continued docking of leave demonstrates Defendant considered Plaintiffs hourly employees, not salaried exempt managers.

*iii. Defendant's Practice of Requiring Employees to Work a Minimum Number of Hours Per Week Also Defeats the Salary Basis Requirement*

Similarly, in *Martin v Malcom Pirnie Inc.*, the Second Circuit held "that a company's general requirement that its employees work at least eight hours in a day strongly suggests that the company views these employees as hourly and not salaried." 949 F.2d 611, 617 (2d Cir. 1991); *see also Brewer v. Mbroh Eng'g, Inc.*, 811 F. Supp. 3d 790, 801 (N.D. Tex. 2025) ("To satisfy the first requirement [of § 541.604(b)], the employer must also guarantee the employee [the minimum salary level] regardless of the number of hours, days or shifts worked.") (citing *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 47 (2023)). Here, Defendant as a matter of policy, required Plaintiffs to work a minimum of 45 hours per week. SUMF ¶ 16; Dkt. 38-2, 54 ("Manager is expected to work a minimum of 45 hours per week in their store."). Consistent with *Martin,* such

a policy strongly suggests that Plaintiffs were perceived as hourly employees, not salaried. Documented reductions in salary and threats to dock salary pay, along with strict attendance requirements, demonstrate that Plaintiffs were not paid on a salary basis as required by 29 C.F.R. § 541.602.

2. Plaintiffs Did Not Customarily Direct the Work of Two or More Employees

Plaintiffs did not customarily direct the work of two or more employees. An employee may be an executive if their primary duty "includes the customary and regular direction of the work of two or more other employees therein." *Shockley*, 997 F.2d at 18, 25–26. "An employee directs the work of two or more employees if her subordinates work 80 hours or more per week, and she directs the work of those employees 'customarily and regularly'. . . . if the 'frequency [is] greater than occasional but ... may be less than constant.'" *In re Family Dollar FLSA Litig.,* 637 F.3d at 513 (quoting 29 C.F.R. § 541.701). To meet the exemption, the employee "must have ***exclusive supervisory authority*** over at least two full-time employees or their equivalent in part-time employees." *Szabo v. Muncy Indus., LLC*, 661 F. Supp. 3d 337, 348 (M.D. Pa. 2023) (emphasis added); *see* 29 C.F.R. § 541.104(b).

In *In re Family Dollar FLSA Litigation,* the Fourth Circuit held that the plaintiff there "testified that the number of employees at her store ranged from three to five and that she always had at least two cashiers." 637 F.3d at 513. An employee for that defendant also testified that plaintiff's subordinates "worked 80 or more hours per week during 89.23% of the weeks that she was a store manager." *Id*. The plaintiff also testified that one of her "primary tasks and functions as a successful store manager" was to "train [employees] and manage them." *Id.* Importantly, "[w]hen employees did not perform a required task, they would have to answer to plaintiff Grace." 637 F.3d at 514; *see also Walsh v. Sofia & Gicelle, Inc.*, No. CV TDC-19-0934, 2021 WL 3472649,

at *6 (D. Md. Aug. 5, 2021) ("Reyes testified that on a regular day, he supervises two cooks who each cover either the daytime or nighttime shift, as well as a full-time dishwasher.").

That bears no resemblance to this case. Plaintiffs did not regularly and customarily direct the work of two or more full-time employees and more often were working alone or with one other employee. SUMF ¶¶ 23-24. Plaintiffs also had no authority to address staffing shortages and would have to work their employees' hours rather than allow them to work overtime. *See* SUMF ¶¶ 25-26; *e.g.*, Ex. F, Bah Depo. at 48:15-18 ("They don't allow us [store managers] to have overtime, but you have to go through a DM to be approved for overtime for a cashier. If not, we have to work those hours."). Further, due to the lack of disciplinary authority, Plaintiffs at no point exercised "exclusive supervisory authority" over Defendant's employees. *See* SUMF 25-26; e.g., Ex. L, Battle Depo. at 40:21-23 ("Honestly, I couldn't move forward with anything disciplinary without the district manager."). Plaintiffs generally had one employee or no employees that worked alongside of them, while Plaintiffs engaged in stocking the cooler, stocking the shelves, running the cash register, and cleaning the convenience store inside and outside. *See* SUMF ¶¶ 21, 23-24. The store manager job description explcitly requires the ability "to work alone for prolonged periods of times without breaks." Dkt. 38-2 at 50-51. Thus, Plaintiffs did not regularly and customarily direct the work of two or more full-time employees.

3. <u>Plaintiffs' Primary Duties were Not Management</u>

Plaintiffs' primary duties were non-managerial, defeating the third factor of the executive exemption. "[W]hether an employee's primary duty is management begins with determining which of the employee's duties involve management of a recognized department or subdivision of the employer. As a "rule of thumb," the employee must devote more than fifty percent of his time to these duties." *Shockley*, 997 F.2d at 25–26. To evaluate this factor, courts look to: "(1) the relative

importance of the managerial duties as compared with other types of duties, (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.*”* *Id.* “Whether a particular duty is administrative or managerial presents a legal question ‘governed by the pertinent regulations promulgated by the Wage and Hour Administrator.’” *Shockley*, 997 F.2d at 26 (citing *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 (1986)). “An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.” 29 C.F.R. § 541.106(a).

Plaintiffs nearly uniformly testified that their primary duties were performing non-exempt tasks like cleaning, stocking, and running the cash register. *See* SUMF ¶¶ 21-22. The first-listed requirement in their job description was to perform the tasks of hourly employees. Dkt. 38-2 at 50-51. Plaintiffs were not responsible for discipline or regularly directing the work of other employees. SUMF ¶¶ 25-27. Regularly, even when Plaintiffs made disciplinary recommendations to their managers, these were ignored. SUMF ¶ 27. Further, Plaintiffs could not exercise judgment or discretion regarding even when they could leave early, come in late, or close the store due to weather events or safety concerns. SUMF ¶¶ 20. Plaintiffs were subject to discipline if they chose to leave early or come in late, even when they were experiencing serious medical issues. *Id.*; *e.g.*, Ex. J, Hill Depo. at 115:6-13 ("When an emergency [arose], we had to have permission from the regional manager or the district manager before we were able to close the location. . . . There was an incident where there was bad weather due to a snowstorm. . . . [The manager at the time] told us we had to get to the store anyway.”). Plaintiffs’ job duties primarily entailed glorified cashier responsibilities, which included *inter alia* cleaning, stocking, running the cash register, and

counting cigarettes. SUMF ¶ 22. Finally, because Defendant's Assistant Store Managers were paid hourly and were paid overtime for hours over 40 per week, when comparing Plaintiffs' 60 to 80 hour workweeks, Plaintiffs could often make less or not much more than they did as hourly employees. *See*, e.g., Ex. EE, Heggs Paystubs, 2 (gross pay of $821.03 as an hourly employee), 10 (gross pay of 775.20 as a salaried employee); Ex. CC, M. Willaims Paystubs, 6 (gross pay of $756.83 as hourly employee), 7 (gross pay of $724.80 as salaried employee); Ex. GG, Hill Paystub, 5 (gross pay of $815.56 as hourly employee), 6 (gross pay of $734 as salaried employee). Given the lack of judgment and discretion Plaintiffs exercised, Plaintiffs' primary duties did not involve management.

4. <u>Plaintiffs Did Not Have the Authority to Hire and Fire</u>

Finally, Plaintiffs did not exercise the requisite hiring or firing authority for the exemption to apply. In *In re Family Dollar FLSA Litig.,* plaintiff had testified "that her district manager followed her employee recommendations and evaluations at least 95% of the time, and thus her suggestions regarding the hiring of employees were given significant weight." *Id*. at 514. "She also testified that she could fire employees and did so on at least one occasion." *Id*. Relevant factors for this analysis include "whether it is within the employee's job description to make such recommendations; the frequency with which the employee's recommendations are made or requested; and the frequency with which the employee's recommendations are relied upon." 29 C.F.R. § 541.105. In *Pollard v. GPM Investments, LLC*, the court held that "[a] recommendation may have particular weight even if '[a] higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.'" No. 3:10-CV-115, 2011 WL 864329, at *10 (E.D. Va. Mar. 10,

2011) (quoting 29 C.F.R. § 541.105). In that case, the plaintiffs had documented hiring and firing authority, and their recommendations would be generally followed. *See id.* at *10.

Here, Defendant's own written policies clearly placed hiring and firing authority above the store level. SUMF ¶¶ 25-26. The store manager job description provides that "[a]ll new hires require a face-to-face interview with the D.M."; its hiring procedures state that an "[a]pplicant cannot be hired without the D.M's interviewing and approval"; and its termination policy provides that "[a]ll terminations must be approved by the District Manager and the Director of Operations or the Vice President." Id.; Dkt. 38-2 at 51, 142. Defendant's Rule 30(b)(6) designee agreed that a district manager must attend the final interview "because there has to be that final approval by a DM." Dkt. 38-12, Clark Dep. 83:18–24. Named Plaintiff Gbete testified that she had no authority over hiring or firing, that "[o]nly the district manager can discipline, hire, or fire any employee," Dkt. 38-13, Gbete Depo. at 100:23-24, and that a store manager who acted on her own "will be considered insubordination to your district manager," *id.* at 101:5-8.

Opt-In Plaintiffs testified similarly that they did not have hiring or firing authority. *See* SUMF ¶ 26. Several Plaintiffs specifically noted that their recommendations for hiring, firing, or discipline were not followed by their managers. *Id.* at ¶ 27. Some Plaintiffs testified that they were not involved in that process at all and did not provide recommendations. *E.g.,* Dkt. 38-13, Gbete Depo. at 102:3-19 (testifying that she didn't do recommendations for disciplinary action because it did not work); Ex. Q, Davis Depo. at 63:24-64:2 ("[I]nterviewing, hiring and firing and disciplinary actions, I did not have a hand in it."). Generally, Plaintiffs were allowed to call candidates schedule job interviews and sit during the interview process, but hiring or disciplining without the district manager's approval was contrary to company policy. SUMF ¶ 26-27; *cf. Grace v. Family Dollar Stores, Inc.*, 845 F. Supp. 2d 653, 663 (W.D.N.C. 2012) (manager "made frequent

recommendations . . . and her recommendations were almost always followed"); *Smith v. AutoZone, Inc.*, No. 7:15-cv-00183, 2016 WL 4718184, at *15 (W.D. Va. May 13, 2016) (manager recruited applicants, screened applications, conducted interviews, contacted references, and decided which candidates to recommend for district manager approval). Accordingly, Plaintiffs did not have the requisite authority required to fall under the FLSA executive exemption.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order granting summary judgment in Plaintiffs' favor that:

1. Defendant is subject to the overtime requirements of the FLSA;
2. Defendant employed Plaintiffs;
3. Defendant did not pay Plaintiffs overtime;
4. Plaintiffs worked over 40 hours per week in at least one or more workweeks;
5. Defendant knew that Plaintiffs worked over 40 hours per week in one or more workweeks;
6. Plaintiffs were not exempt from the overtime requirements of the FLSA; and
7. Granting any other relief the Court deems appropriate.

Respectfully submitted, this the 15th day of October, 2026.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
S. Byron Frazelle (NCSB No.59771)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy Street
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com

Philip J. Gibbons, Jr., NCSB #50276
**GIBBONS LAW GROUP, PLLC**
10801 Johnston Road, Suite 211
Charlotte, North Carolina 28226
Telephone: (704) 612-0038
phil@gibbonslg.com

Evan G. Gungor, NCSB #60902
**GIBBONS LAW GROUP, PLLC**
1144 Executive Circle, Ste 220
Cary, NC 27511
Telephone: (919) 706-0211
E-Mail: evan@gibbonslg.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT**

I hereby certify that this memorandum complies with Local Civil Rule 7.2(f)(2)(A) because it does not exceed thirty (30) pages, excluding the parts of the document exempted by Local Civil Rule 7.2(f)(1).

Respectfully submitted this October 15, 2026.


*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
S. Byron Frazelle (NCSB No.59771)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy Street
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com

Philip J. Gibbons, Jr., NCSB #50276
**GIBBONS LAW GROUP, PLLC**
10801 Johnston Road, Suite 211
Charlotte, North Carolina 28226
Telephone: (704) 612-0038
phil@gibbonslg.com

Evan G. Gungor, NCSB #60902
**GIBBONS LAW GROUP, PLLC**
1144 Executive Circle, Ste 220
Cary, NC 27511
Telephone: (919) 706-0211
E-Mail: evan@gibbonslg.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2026, the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** was served in accordance with the Federal Rules of Civil Procedure on the following:

Phillip J. Strach, N.C. Bar No. 29546
Nathaniel J. Pencook, N.C. Bar No. 52339
Jordan A. Koonts, N.C. Bar No. 59363
Kacie T. England N.C. Bar No. 62343
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
phil.strach@nelsonmullins.com
nate.pencook@nelsonmullins.com
jordan.koonts@nelsonmullins.com
kacie.england@nelson.mullins.com

Matthew A. Abee, N.C. State Bar No. 46949
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: (803) 255-9335
Facsimile: (803) 255-5167 (fax)
matt.abee@nelsonmullins.com
*Attorneys for Defendant*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
S. Byron Frazelle (NCSB No. 59771)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com

Philip J. Gibbons, Jr., NCSB #50276
**GIBBONS LAW GROUP, PLLC**

10801 Johnston Road, Suite 211
Charlotte, North Carolina 28226
Telephone: (704) 612-0038
phil@gibbonslg.com

Evan G. Gungor, NCSB #60902
**GIBBONS LAW GROUP, PLLC**
1144 Executive Circle, Ste 220
Cary, NC 27511
Telephone: (919) 706-0211
E-Mail: evan@gibbonslg.com

*Attorneys for Plaintiffs*