**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

Case No. 5:23-CV-00355-BO-KS

| | | |
|---|---|---|
| JEANNE LYLIANE GBETE, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF PAUL F. WHITE, PH.D.** |
| v. | ) | |
| SAMPSON BLADEN OIL COMPANY, INC. d/b/a HAN-DEE HUGO'S, | ) | Fed. R. Evid. 402, 403, and 702 |
| Defendant. | ) | |

## TABLE OF CONTENTS

I. NATURE OF THE CASE ..... 5
II. STATEMENT OF FACTS ..... 7
A. The Claims and Procedural Posture ..... 7
B. The Challenged Compensation Practices ..... 7
C. The Assignment and the Analysis Actually Performed ..... 8
D. The Disclosed Qualifications and Conclusions ..... 9
III. QUESTION PRESENTED ..... 9
IV. ARGUMENT ..... 10
A. Governing Standard ..... 10
B. The Report Does Not Reliably Connect Differences in Recorded Hours to the Misclassification Issues. ..... 10
1. The Report does not analyze the character of the work performed. ..... 11
2. The Report Measures Hours Worked, Not Exempt Status. ..... 12
C. SBOC Has Not Established That Dr. White Is Qualified to Supply the Missing Duties Analysis. ..... 14
D. The 45-Hour Threshold Uses the Wrong Overtime Standard and Independently Requires Exclusion. ..... 16
E. Section V and Appendix B Are Not a Reliable Expert Analysis of Store Manager Duties. ..... 18
1. The Report offers a narrative without a disclosed method connecting it to exempt status. ..... 18
2. The Report's counts and comparisons are not supported by its own compilation. ..... 19
3. The narrative omits qualifications central to the duties inquiry. ..... 23
F. The Decertification Motion Does Not Cure the Report's Analytical Defects. ..... 24
V. CONCLUSION ..... 25
CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ..... 28
CERTIFICATE OF SERVICE ..... 29

## TABLE OF AUTHORITIES

### Cases

*American Honda Motor Co. v. Allen,*
600 F.3d 813 (7th Cir. 2010)........25

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946)........22

*Brainchild Surgical Devices, LLC v. CPA Global Ltd.,*
144 F.4th 238 (4th Cir. 2025)........14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993)........10, 12, 18

*E.M.D. Sales, Inc. v. Carrera,*
604 U.S. 45 (2025)........11

*General Electric Co. v. Joiner,*
522 U.S. 136 (1997)........10, 14, 19, 20, 24

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Products Liability Litigation,*
892 F.3d 624 (4th Cir. 2018)........23

*Kelly v. City of Alexandria,*
163 F.4th 95 (4th Cir. 2025)........16

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999)........10

*Nix v. Chemours Co. FC, LLC,*
No. 7:17-CV-189-D, 2026 WL 1129097 (E.D.N.C. Apr. 20, 2026)........10, 14, 18, 23

*Romero v. Mountaire Farms, Inc.,*
796 F. Supp. 2d 700 (E.D.N.C. 2011)........24

*Sardis v. Overhead Door Corp.,*
10 F.4th 268 (4th Cir. 2021)........10

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,*
318 F.3d 592 (4th Cir. 2003)........16, 25

*Thomas J. Kline, Inc. v. Lorillard, Inc.,*
878 F.2d 791 (4th Cir. 1989)........14

*United States v. Barile,*
286 F.3d 749 (4th Cir. 2002)........16

*United States v. Janati,*
374 F.3d 263 (4th Cir. 2004)........23

*United States v. McIver,*
470 F.3d 550 (4th Cir. 2006)........16, 25

*United States v. Wilson,*
484 F.3d 267 (4th Cir. 2007)........18

*Williams v. Sig Sauer, Inc.,*
799 F. Supp. 3d 470 (E.D.N.C. 2025)........10, 15, 18

## TABLE OF AUTHORITIES (continued)


### Statutes

29 U.S.C. § 207 .......... 5, 16

### Regulations

29 C.F.R. pt. 541 .......... 9
29 C.F.R. § 541.2 .......... 11
29 C.F.R. § 541.100 .......... 12
29 C.F.R. § 541.104 .......... 12
29 C.F.R. § 541.105 .......... 12
29 C.F.R. § 541.602 .......... 6, 11, 16
29 C.F.R. § 541.603 .......... 16
29 C.F.R. § 541.700 .......... 11, 23
29 C.F.R. § 778.104 .......... 17
29 C.F.R. § 785.48 .......... 22

### Rules

Fed. R. Civ. P. 8(c)(1) .......... 5
Fed. R. Civ. P. 23 .......... 7, 25
Fed. R. Civ. P. 26(a)(2)(B) .......... 15, 25
Fed. R. Civ. P. 37(c)(1) .......... 16, 25
Fed. R. Evid. 104(a) .......... 10
Fed. R. Evid. 402 .......... 6, 18, 26
Fed. R. Evid. 403 .......... 6, 18, 26
Fed. R. Evid. 702 .......... passim
Fed. R. Evid. 702 advisory committee's note to 2023 amendment .......... 10
Local Civil Rule 7.2(f)(1), (3)(A) .......... 28

## I. NATURE OF THE CASE

This is a misclassification case. Plaintiff Jeanne Lyliane Gbete ("Ms. Gbete") alleges that Defendant Sampson Bladen Oil Company, Inc. d/b/a Han-Dee Hugo's ("SBOC") classified its convenience-store managers ("Store Managers") as exempt and denied them overtime required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. A comparison of total recorded hours does not establish that this classification was lawful.[1]

SBOC served the Expert Report of Paul F. White, Ph.D. ("Dr. White"), on September 15, 2026. (Ex. 1, the "Report.")[2] Dr. White states that he was engaged to assess allegations that Store Managers "were misclassified as overtime-exempt employees and were not paid for overtime hours worked." (Ex. 1, Report at 23; *see also* Ex. 1, Report at 1.) He immediately specifies an assignment to evaluate variation in employees' experiences. (Ex. 1, Report at 1, 23.) Yet, even assuming an exemption defense is available, the Report does not evaluate whether management was each Plaintiff's primary duty, whether Plaintiffs satisfied the applicable salary requirements, whether they customarily and regularly directed the work of two full-time employees or the equivalent, or whether they had hiring or firing authority or personnel recommendations given particular weight. Nor does it apply those criteria to conclude that any Plaintiff was properly classified. (See Ex. 1, Report at 7, 18–24.) Instead, its principal analysis compares total recorded

---

[1] SBOC did not separately identify an FLSA exemption among its enumerated affirmative defenses. (ECF No. 13 at 13–16.) Plaintiffs preserve their waiver and timeliness objections to any unpled exemption defense. *See* Fed. R. Civ. P. 8(c)(1). The analysis below assumes, solely for purposes of this motion, that an exemption defense is available. It does not concede preservation of any defense, identify an exemption on SBOC's behalf, or constitute consent to amendment of the pleadings or trial of an unpled defense.

[2] Exhibits previously filed with the Court are cited to their ECF docket entries. Other exhibit citations refer to Plaintiffs' Appendix of Exhibits filed contemporaneously with this memorandum: Exhibit 1 is Dr. White's Report; Exhibit 2 is Appendix B to the Report; and Exhibits 3–8 are deposition excerpts. ECF page references are to the CM/ECF-generated page numbers; deposition citations refer to the original transcript page and line numbers.

hours worked for each Plaintiff and declares that employees' experiences differ. (Ex. 1, Report at 8–18, 24.) That is not a proper analysis of exempt status.

Specifically, statistical differences in total hours worked do not establish whether management was a Store Manager's primary duty. Dr. White's disclosed qualifications do not establish expertise in the job-duty analysis needed to answer that question. The Report also assumes salary-basis compensation without analyzing the challenged pay practices. (Ex. 1, Report at 7.) His treatment of an employer's statutory overtime obligations compounds the problem: he substitutes Defendant's 45-hour minimum expectation for the FLSA's 40-hour threshold. (Ex. 1, Report at 7.)[3] Section V and Appendix B add selected descriptions of testimony, but no reliable method connecting those descriptions to the exemption requirements. They also contain unsupported counts and omit material qualifications concerning managerial authority. (Ex. 1, Report at 22–23; Ex. 2, App. B, Sheet2, cols. M, P–Q, S–T; see infra § IV.E.)

Plaintiffs seek exclusion of Dr. White's opinions and the Report, including its figures and Appendix B, under Rules 402, 403, and 702. SBOC cannot present a statistical comparison of hours as expert analysis of misclassification, use the wrong overtime standard to supply a damages rationale the Report does not develop, or substitute an expert's selective narrative for the witnesses' testimony. These objections extend to any reliance on the challenged opinions for decertification, as well as their use at trial. See infra § IV.F.

[3] SBOC's 45-hour minimum is a scheduling requirement in its Job Description, not the statutory overtime threshold. The separate salary-basis inquiry concerns whether predetermined compensation was subject to impermissible reduction based on the quantity or quality of work. See 29 C.F.R. § 541.602(a)–(b). The Report examines hours, not whether SBOC's pay practices complied with that requirement.

## II. STATEMENT OF FACTS

### A. The Claims and Procedural Posture

The Court conditionally certified a collective of Store Managers on September 26, 2025. (ECF No. 49.) 31 Store Managers have filed consents and remain in the case (the "Opt-In Plaintiffs"; with Ms. Gbete, "Plaintiffs"). The Court denied Rule 23 class certification on April 29, 2026. (ECF No. 64.) On October 15, 2026, SBOC moved to decertify the collective. (ECF No. 121.)

SBOC uses one written Store Manager job description, Policy 100-015-03 (ECF No. 38-2 at 50, 54, the "Job Description"), which labels the position exempt and establishes an expectation of at least 45 hours per week. (Ex. 1, Report at 7, 18–19.) On February 2, 2022, SBOC stopped requiring Store Managers to clock in and out. (ECF No. 38-3, the "Timekeeping Memorandum"; Ex. 1, Report at 6–7.) Dr. White states his understanding that there were no structural or duty changes in the position after that memorandum. (Ex. 1, Report at 7 n.6.)

### B. The Challenged Compensation Practices

Plaintiffs challenged SBOC's docking practices in their certification memorandum. SBOC responded that it did not reduce salary for partial-day absences after paid leave was exhausted. (ECF No. 38 at 10, 15 n.13, 30; ECF No. 44 at 15, 31.) In SBOC's corporate deposition, Manly Clark ("Clark") described requiring vacation or sick leave for a planned four-hour absence unless the employee made up the time during the same week. (ECF No. 38-12 at 17, Clark Dep. 61:3–14.) Plaintiffs also cite testimony concerning threatened and actual salary deductions, not merely the 45-hour scheduling requirement. Shank declared that she had to cover partial-day absences with vacation or sick leave or SBOC would deduct from her weekly salary. (ECF No. 38-22, Shank Decl. ¶¶ 25–26.) Tonica Williams testified that she sometimes had to leave early and "was docked on my pay for it." (Ex. 3, T. Williams Dep. 44:15–16.) Dr. White

identifies the certification briefs, Clark's deposition, Shank's declaration, and Williams's deposition as materials considered, yet states only his understanding that Store Managers were "compensated on a salary basis." (Ex. 1, Report at 2–3, 7.) This salary-basis challenge is one aspect of Plaintiffs' broader challenge to the classification, which also disputes satisfaction of the primary-duty, supervision, and personnel-authority requirements discussed below. See infra § IV.B.1.

**C. The Assignment and the Analysis Actually Performed**

Dr. White describes his engagement as assessing the misclassification allegations, then states that, "[m]ore specifically," he was asked to address variation in experiences across the Opt-In Plaintiffs. (Ex. 1, Report at 23; *see also* Ex. 1, Report at 1.) His statistical analysis is directed to average recorded weekly hours worked for Plaintiffs, variation in hours worked both within and between employees, and percentages of weeks in which Plaintiffs exceeded SBOC's 45-hour minimum expectation. (Ex. 1, Report at 10–18.) He reserves the right to offer a separate rebuttal opinion regarding damages or other analyses, but provides no damages calculation in this Report. (Ex. 1, Report at 1.)

After excluding automated entries that did not reflect actual punches, Dr. White assembled punch records for 16 of the 30 Plaintiffs included in his September 2026 analysis. (Ex. 1, Report at 6–8 & tbl. 2.) None of the periods in Table 2 extends beyond July 26, 2022. (Ex. 1, Report at 8.) He expressly defines overtime as hours worked above 45 in a workweek to align his analysis with SBOC's Job Description, and applies analysis of variance ("ANOVA") to total hours and the proportion of weeks above that threshold. (Ex. 1, Report at 7, 12, 17.)

Section V summarizes deposition testimony and declarations concerning store amenities, schedules, evaluations, hiring, District Manager ("DM") assignments, and time spent on

managerial tasks. (Ex. 1, Report at 18–23.) Appendix B is the spreadsheet underlying those comparisons. (Ex. 2, App. B.) The Report describes it as "illustrative" and "not meant to be an exhaustive catalogue" of the testimony. Dr. White acknowledges that some transcripts were not provided before he signed the Report. (Ex. 1, Report at 19 nn.15–16.) Appendix B contains no entry-specific transcript page or line citations.

**D. The Disclosed Qualifications and Conclusions**

Dr. White holds a Ph.D. in labor economics and health economics, with a minor in statistics. (Ex. 1, Report, App. A at 30.) He describes economic and statistical work in wage-and-hour and other employment litigation. (Ex. 1, Report at 1; Ex. 1, Report, App. A at 1–2.) The Report and resume do not identify a particular job-analysis methodology he is qualified to apply here or explain experience evaluating each Plaintiff's primary duty under the 29 C.F.R. Part 541 factors. The Report discloses no such analysis.

The conclusions concern variation in hours, the asserted absence of typical hours, and whether Ms. Gbete's experience is typical or representative. Dr. White also attributes differences in hours to staffing, location, foot traffic, turnover, and store amenities. (Ex. 1, Report at 24.) None of those conclusions determines any Plaintiff's primary duty, evaluates salary-basis compliance, or explains how the employee's actual work and compensation satisfy an exemption.

## III. QUESTION PRESENTED

Whether SBOC may offer Dr. White as an expert on misclassification when his Report supplies no duties analysis and his disclosed qualifications do not establish expertise in that inquiry. Whether his remaining opinions may be relied upon for decertification or admitted at trial when his principal analysis compares total hours under an erroneous 45-hour overtime

threshold and his narrative of the testimony lacks a reliable method and misreports its own supporting compilation.

## IV. ARGUMENT

### A. Governing Standard

SBOC must establish, more likely than not, that Dr. White is qualified for the opinions offered and that his testimony will assist the factfinder, rests on sufficient facts or data, employs reliable principles and methods, and reflects a reliable application of those methods. Fed. R. Evid. 702. The Court must decide those admissibility questions rather than leave them to the jury as issues of weight. Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281–84 (4th Cir. 2021); *Nix v. Chemours Co. FC, LLC*, No. 7:17-CV-189-D, 2026 WL 1129097, at *10 (E.D.N.C. Apr. 20, 2026) (quoting the final note's statement that rulings treating these questions as matters of weight "are an incorrect application of Rules 702 and 104(a)"); *Williams v. Sig Sauer, Inc.*, 799 F. Supp. 3d 470, 483–84 (E.D.N.C. 2025), *appeal docketed*, No. 25-2196 (4th Cir. Oct. 8, 2025).

The proposed testimony must fit the issues the factfinder must decide. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). A method useful for one purpose does not establish relevance to another. *Id.* The Court may exclude an opinion where the analytical gap between the data and the conclusion is too great. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). These requirements apply to all expert testimony, including opinions offered on the basis of experience. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999).

### B. The Report Does Not Reliably Connect Differences in Recorded Hours to the Misclassification Issues.

Dr. White describes an assignment to evaluate variation in employees' experiences in connection with the misclassification allegations. (Ex. 1, Report at 1, 23.) The objection is that

his disclosed analysis does not reliably support the significance he attributes to that variation. (Ex. 1, Report at 9–12, 20, 24.) An employer invoking an FLSA exemption bears the burden of establishing its applicability by a preponderance of the evidence. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48, 54 (2025). A showing that employees worked different total hours does not supply the missing analysis of their duties or the basis of their compensation.

**1. The Report does not analyze the character of the work performed.**

A job title or an employer's exempt designation does not establish an exemption; the employee's salary and duties must satisfy the applicable regulatory requirements. 29 C.F.R. § 541.2. An employer's expectation that its Store Managers work at least 45 hours does not establish compliance with those requirements. The salary-basis question is whether employees regularly received predetermined compensation that was not subject to impermissible reductions because of the quantity or quality of work, subject to the regulatory exceptions. 29 C.F.R. § 541.602(a)–(b). Dr. White compares recorded hours against the 45-hour minimum but does not examine the compensation actually paid when employees fell short of it. (Ex. 1, Report at 7, 10–18.)

Primary duty concerns the most important duty performed and the character of the job as a whole. The pertinent factors include the relative importance of exempt duties, the time devoted to exempt work, freedom from direct supervision, and the relationship between the employee's salary and wages paid for comparable nonexempt work. 29 C.F.R. § 541.700(a). Time spent performing exempt work is different from total time at work. Dr. White's statistical analysis measures the latter, not the former. It does not distinguish a week spent principally managing from one spent principally performing nonmanagerial tasks. (Ex. 1, Report at 10–18.)

Nor does the ANOVA analysis supply that distinction. The test described in the Report addresses equality of average recorded hours. (Ex. 1, Report at 12 & n.12.) It does not test which duties were primary, the significance of the duties, or the authority exercised. Finding that employees' average hours differ cannot establish that one employee's work was exempt and another's was not. The Report makes the statistical finding without establishing any connection to the exemption requirements. That failure of fit requires exclusion of the unsupported inferences under Rule 702(a) and (d). *Daubert*, 509 U.S. at 591.

Primary duty is only one part of the managerial exemption theory SBOC invoked in its certification opposition. (ECF No. 44 at 22.) Assuming solely for this motion that SBOC may pursue that theory, it must also establish salary-basis compensation at the applicable salary level, customary and regular direction of the work of two full-time employees or their equivalent, and hiring or firing authority or personnel recommendations given particular weight. 29 C.F.R. §§ 541.100(a), 541.104(a), 541.105. The statistical comparison of each Plaintiff's own hours supplies none of that analysis, and the testimony compilation does not evaluate the significance of the activities it lists. (Ex. 1, Report at 7, 10–24.)

**2. The Report Measures Hours Worked, Not Exempt Status.**

The number of overtime hours worked concerns the unpaid compensation recoverable for nonexempt work; it is not a substitute for determining whether the employee was exempt.

Here, Dr. White compares Ms. Gbete's average of 66.4 recorded hours worked to other managers' averages and emphasizes that 37.5% of the analyzed employees averaged 45 or fewer hours. (Ex. 1, Report at 11, 24.) Those comparisons do not establish whether management was anyone's primary duty or whether the other applicable requirements were satisfied. Plaintiffs' challenge extends to the salary-basis, supervision, and personnel-authority requirements as well

as primary duty. See 29 C.F.R. § 541.100(a). The comparisons address the quantity of recorded work, not its exempt or nonexempt character. Yet the Report uses those differences to challenge the asserted common experience underlying the misclassification claims. (Ex. 1, Report at 9–12, 20.)

The distinction is particularly clear in Dr. White's discussion of SBOC's policies. He reasons that differences in hours worked between Plaintiffs show the policies did not produce uniform outcomes. (Ex. 1, Report at 9–10.) Plaintiffs do not contend that the policies produced identical hours. They challenge the common exempt classification applied to their work. Dr. White acknowledges the common Job Description and the absence of duty changes following the Timekeeping Memorandum, but never evaluates whether the duties actually performed justified the classification. (Ex. 1, Report at 7 & n.6, 18–19.)

The Report supplies no separate damages opinion to fill this gap. Dr. White reserves damages rebuttal for another report; he does not calculate unpaid overtime here. (Ex. 1, Report at 1, 24.) Even his selected overtime measure excludes the hours between 40 and 45, as discussed below. The Report thus neither analyzes exempt status nor supplies a reliable statutory overtime analysis. The Report purports to answer how many hours Store Managers worked, not whether they were exempt.

Section V does not cure the problem. Listing employees who prepared schedules, interviewed applicants, or performed other tasks is not an assessment of primary duty. Dr. White does not explain the relative importance of those tasks in the jobs as a whole, evaluate their performance under DM control, or determine the significance of personnel recommendations under the regulations. (Ex. 1, Report at 18–24.) The missing work is not merely a final sentence

stating a legal result. It is the specialized analysis needed to connect the underlying evidence to the exemption issue.

A limited assignment does not insulate the resulting opinions from Rule 702. Dr. White affirmatively moves from variation in recorded hours to assertions that common policies did not produce uniform outcomes and that individualized assessments are necessary. (Ex. 1, Report at 9–12, 20, 24.) His Report must supply a reliable connection between the measured variation and those conclusions. A new procedural use for the opinions cannot fill that analytical gap. *Joiner*, 522 U.S. at 146.

**C. SBOC Has Not Established That Dr. White Is Qualified to Supply the Missing Duties Analysis.**

Rule 702 requires expertise suited to the particular opinion, not a credential in a generally related subject. In *Brainchild Surgical Devices, LLC v. CPA Global Ltd.*, 144 F.4th 238, 254 (4th Cir. 2025), the Fourth Circuit upheld exclusion where experience in international business and contracting did not establish expertise in the patent-renewal services at issue. The inquiry is whether the witness has the knowledge or experience needed for the issue on which the opinion is offered. *Id.*; *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799–800 (4th Cir. 1989); *Nix*, 2026 WL 1129097, at *8 (concluding that an expert's general qualifications in abatement and pollution control did not qualify her to opine on PFAS abatement).

Dr. White's education is in economics and statistics. His resume identifies wage-and-hour litigation, economic damages, and statistical work, but neither the resume nor this Report explains specialized knowledge or experience for assessing these Store Managers' primary duties. (Ex. 1, Report at 1; Ex. 1, Report, App. A at 1–2, 30.) General involvement in employment litigation does not establish the necessary qualification. SBOC must demonstrate

the connection between Dr. White's actual expertise and the duties opinions for which it seeks to use his work. It has not done so in the disclosures presented.

*Williams* applies the same principle in this district: broad experience with firearms or mechanical engineering did not itself qualify the witnesses to give the particular design and causation opinions offered. 799 F. Supp. 3d at 482–85. Here, calculating means, percentages, and statistical variation does not establish expertise in determining the significance of managerial tasks, the nature of supervisory control, or the character of a retail job as a whole. The Report identifies no qualified application of those concepts to these Plaintiffs.

The Report's substitution of a 45-hour overtime threshold reinforces that deficiency. Dr. White expressly adopts the employer's workweek expectation as the definition of overtime rather than the standard supplied by the FLSA. (Ex. 1, Report at 7.) That choice supplies no basis to conclude that he has brought expertise in the governing wage-and-hour requirements to the classification inquiry.

SBOC likewise may not supply the missing duties or salary-basis analysis through previously undisclosed expert opinions without satisfying Rules 26 and 37. Rule 26(a)(2)(B)(i) requires disclosure of the opinions to be expressed and their bases and reasons. The Report discloses no determination of primary duty and no analysis supporting its salary-basis characterization. Dr. White states only his understanding that Store Managers were "compensated on a salary basis." (Ex. 1, Report at 7.) He does not analyze SBOC's treatment of partial-day absences, leave exhaustion, or actual pay, although the certification briefing and Clark's testimony put those practices before him. (ECF No. 38 at 10, 15 n.13, 30; ECF No. 44 at 15, 31; ECF No. 38-12 at 17, Clark Dep. 61:3–14.) The Report likewise does not address Shank's account of threatened salary deductions or Williams's testimony that her pay was docked for

leaving early. See supra § II.B. Moreover, the Report does not determine whether SBOC's 45-hour minimum affected predetermined compensation, whether deductions were made when employees worked fewer hours, or whether any such deductions fell within permissible exceptions. See 29 C.F.R. §§ 541.602(a)–(b), 541.603. Salary basis turns on how employees are actually paid. 29 C.F.R. § 541.602(a); *Kelly v. City of Alexandria*, 163 F.4th 95, 103 & n.9 (4th Cir. 2025). Dr. White's stated understanding is an assumption, not an expert finding, and SBOC may not present it as one. Rule 37(c)(1) bars use of undisclosed opinions on a motion, at a hearing, or at trial absent substantial justification or harmlessness. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). A general statement that Dr. White assessed misclassification allegations is not disclosure of the analysis missing from the Report.

Nor may an unsupported exemption conclusion be substituted for that analysis. An expert generally may not instruct the jury on the legal result by applying a legal standard to the facts. *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *United States v. Barile*, 286 F.3d 749, 760–61 (4th Cir. 2002). SBOC cannot present Dr. White's statistical work as an expert determination that its classification was lawful when no qualified, reliable duties analysis supports that presentation.

**D. The 45-Hour Threshold Uses the Wrong Overtime Standard and Independently Requires Exclusion.**

The FLSA's overtime threshold is 40 hours in a workweek, not 45. 29 U.S.C. § 207(a)(1). Dr. White nonetheless states: "I define overtime as hours worked over 45 in a workweek in my analysis to align with the Store Manager's job description." (Ex. 1, Report at 7.) This is not an incidental label. It is the boundary used to classify weeks and support the Report's conclusions about employees' overtime experiences.

Figures 3 through 6 place a reference line at 45 hours and visually distinguish hours above it. Figures 7 and 8 calculate the percentage of weeks above 45. (Ex. 1, Report at 14–18.) Dr. White then emphasizes that Opt-In Plaintiffs Stephen Vetter and Kaiulani Moses seldom crossed that line and that six analyzed Plaintiffs averaged 45 or fewer hours. (Ex. 1, Report at 11, 14, 24.) Those measures fail to count weeks containing work between 40 and 45 hours as overtime weeks. They therefore cannot support the overtime inferences for which he offers them.

An internal scheduling expectation cannot change the statute. Nor does compliance with a 45-hour expectation determine primary duty. Thus, whether SBOC characterizes the analysis as addressing exemption or attempts to invoke damages, the chosen threshold does not answer the governing question. Calling it an expressly disclosed assumption does not make it a legally appropriate measure. The resulting statistics and figures should be excluded, not presented with the authority of expert testimony.

Averaging hours across multiple workweeks creates an additional defect in any inference about the absence of overtime. Each workweek stands alone. 29 C.F.R. § 778.104. A nonexempt employee who works 35 hours one week and 55 the next averages 45 hours but has 15 overtime hours in the second week. Dr. White's emphasis on employees whose averages fall below 45 cannot establish that they lacked compensable overtime in particular weeks. (Ex. 1, Report at 11, 24.)

The same defect matters if SBOC invokes these measures to establish dissimilarity for decertification. A cutoff at 45 cannot establish differences in statutory overtime incidence because it omits weeks containing more than 40 but no more than 45 hours. If SBOC relies instead on deviations from its minimum schedule, the Report must reliably connect those

deviations to the classification issues or the asserted need for separate proof. Labeling them "overtime" does not supply that connection. (Ex. 1, Report at 7, 9–12, 17–18.)

At trial, the prejudice is direct: the jury would be shown an expert presentation organized around the employer's threshold rather than the statutory one, while being asked to resolve misclassification and unpaid overtime. The danger of confusing those questions substantially outweighs any probative value of the challenged presentation. Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595; *see also Nix*, 2026 WL 1129097, at *7 (excluding emissions estimates to the extent they counted a compound whose classification did not bear on the claims, and finding any probative value substantially outweighed under Rule 403). The 45-hour definition, derivative percentages, figures, and conclusions fail Rules 402 and 702 as well.

**E. Section V and Appendix B Are Not a Reliable Expert Analysis of Store Manager Duties.**

**1. The Report offers a narrative without a disclosed method connecting it to exempt status.**

Section V recounts testimony concerning car washes, diesel pumps, scheduling, evaluations, interviewing, and DMs. (Ex. 1, Report at 18–23.) It does not explain a specialized method for determining what those accounts establish about the primary-duty factors. The factfinder can hear the witnesses and evaluate the tasks they performed. Dr. White's credentials do not convert his selection and retelling of that evidence into assistance requiring expert testimony. *See Williams*, 799 F. Supp. 3d at 480.

An expert relying on experience must explain how that experience leads to the conclusion, why it supplies a sufficient basis, and how it was reliably applied. *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Section V provides no such explanation. It does not disclose how testimony was selected, how qualified answers were classified, how missing answers were treated, or how the resulting categories establish the character of the jobs. The

ultimate assertion that differences in hours were driven by location, foot traffic, staffing, and amenities likewise lacks an explained method connecting the examples to that conclusion. (Ex. 1, Report at 24.) *Joiner* does not permit the expert's conclusion to substitute for that missing connection. 522 U.S. at 146.

The Report expressly limits Appendix B to an illustrative, nonexhaustive collection assembled before all transcripts were received. (Ex. 1, Report at 19 nn.15–16.) No entry identifies its supporting transcript page and line. Dr. White uses the compilation to make broad comparisons across the Plaintiffs, not merely to identify a particular witness's account. SBOC has not established a sufficient, reliably applied basis for those comparisons. Fed. R. Evid. 702(b)–(d).

**2. The Report's counts and comparisons are not supported by its own compilation.**

The following discrepancies can be identified from the materials Dr. White supplied, without asking the Court to resolve the underlying witnesses' credibility:

| Report statement | What Appendix B actually records |
|---|---|
| Footnote 36 includes Jennie O'Donnell among eight Opt-In Plaintiffs who spent at least three hours per day on managerial tasks. (Ex. 1, Report at 23 n.36.) | Cell M6 states "2-3 hrs/day; 40% managerial." The stated range does not establish the three-hour minimum used in the Report. Dr. White does not explain how the percentage and range support his count. (Ex. 2, App. B, Sheet2, cell M6.) |
| "[A]ll but six opt-in plaintiffs prepared performance evaluations for their employees." (Ex. 1, Report at 22.) | Of 22 Opt-In entries, 14 are affirmative, six negative, and two blank: Amanda Hill (Q18) and Kristen Brown (Q19). Appendix B does not document 16 affirmative answers. The Report supplies no explanation for its treatment of the two missing responses. (Ex. 2, App. B, Sheet2, col. Q, excluding Ms. Gbete's row.) |
| Ms. Gbete had additional storage-unit responsibilities compared to the Opt-In Plaintiffs. (Ex. 1, Report at 20.) | Opt-In Plaintiff Guadalupe Sanchez's entry includes "storage units when covering a different store." The comparison omits that another Plaintiff performed storage-unit work. (Ex. 2, App. B, Sheet2, cell AA17.) |

The Report also extends its conclusions beyond the records analyzed. Dr. White states that Vetter worked fewer than 45 hours in almost 90% of weeks "during his entire tenure." (Ex. 1, Report at 14.) Table 2 provides Vetter's punches only from June 27, 2020 through July 26, 2022; Table 1 shows employment as a Store Manager beginning in April 2004. (Ex. 1, Report at 6, 8.) The Report does not explain how approximately two years of punches establish hours throughout that tenure. It also calls Opt-In Plaintiff Jada Mitchell's tenure "three and a half" months, although Table 1 shows April 22 through July 8, 2022, or 77 elapsed days. (Ex. 1, Report at 6, 22.)

These are failures to keep the narrative within the information its stated source supports. The missing answers, overstated minimum, and unsupported temporal scope undermine the claimed reliability of the comparisons. Rule 702(d) requires reliable application to the actual facts, not an assertion of certainty detached from the underlying compilation. *Joiner*, 522 U.S. at 146.

Appendix B and the deposition testimony also raise a more fundamental question: whether the punch records capture the hours actually worked. Ms. Gbete's entry records a weekly-hours figure of 100, while the Report calculates a recorded average of 66.4. (Ex. 2, App. B, Sheet2, cell L15; Ex. 1, Report at 11.) The following examples identify additional differences between the punch-based averages and the testimony, as well as specific reasons to question whether the punches captured all work.

Figure 1 places Opt-In Plaintiff Kaiulani Moses at roughly 37 hours per week, and the Report identifies her as an employee who "worked less than 40 hours per week." (Ex. 1, Report at 11 & fig. 1.) She testified that she worked "about 45, sometimes 50" hours in weeks without weekend work and 10 to 15 hours over 40 when she came in on weekends. (Ex. 4, Norman Dep.

57:2–16.) She also testified that she "always work[ed] over 40 hours" and "didn't really clock in and out" because of recurring internet problems. (Ex. 4, Norman Dep. 66:5, 67:11–13.) The Report does not explain how its punch-based average accounts for that testimony about unrecorded work.

Figure 1 places Opt-In Plaintiff Jennie O'Donnell at roughly 41 hours per week. (Ex. 1, Report at 11 & fig. 1.) She testified that she was "obligated to work 45" and worked 55 to 60 hours "a couple times a month." (Ex. 5, O'Donnell Dep. 36:18–37:2.) Figure 1 similarly places Opt-In Plaintiff Anita Marie Balloon at roughly 44 hours. (Ex. 1, Report at 11 & fig. 1.) She testified to about 80 hours per week early in her tenure, 50 to 55 in the middle years, and 50 to 60 at the end, although elsewhere she estimated her middle-period hours at 45. (Ex. 6, Balloon Stokley Dep. 64:8–19, 31:19–23.) The Report does not reconcile those accounts with the recorded averages or explain how the periods described correspond to the weeks included in Figure 1.

Figure 1 places Opt-In Plaintiff Oley Jobe near 50 hours per week, but Table 2 shows that his punch records end on October 24, 2021. (Ex. 1, Report at 8, tbl. 2, 11 & fig. 1.) Mr. Jobe testified that, at store 54, he worked "65, 70, sometimes maybe more than that a week," seven days a week, during and after the pandemic. (Ex. 7, Jobe Dep. 54:7–15, 55:2–3.) The Report does not explain how the period covered by that testimony aligns with the available punch records or what, if anything, those records establish about work outside the recorded period.

Opt-In Plaintiff Loneshia Heggs also testified that SBOC stopped having managers clock in because "we were working over hours and they didn't want that to show." (Ex. 8, Heggs Dep. 43:9–15.) Appendix B further lists Ms. Heggs as working five to six days per week, although the cited answer described how often she was alone in the store. She testified that she worked "every

day, even had to do doubles," and went at least a month without a day off. (Ex. 2, App. B; Ex. 8, Heggs Dep. 33:21–34:9, 42:11–21.) Treating days worked alone as total days worked changes the subject of the answer and supplies no reliable measure of her work schedule.

These examples expose an unaddressed premise in the Report's use of punch data to characterize Plaintiffs' work experiences. The issue is not simply that witnesses gave different estimates; Ms. Moses identified recurring failures to record work, and Ms. Heggs's entry mischaracterizes the testimony it summarizes. Where an expert's conclusions depend on treating recorded punches as complete measures of actual work, the proponent must establish a sufficient factual basis for that premise and a reliable application of the method. The Report does not reconcile the identified testimony with its averages, account for the recording problem, or explain the effect of differences in the periods compared. Statistical analysis of recorded hours cannot itself establish that those records capture all work performed. Fed. R. Evid. 702(b), (d).

The inadequacy of time records also bears on proof of hours if Plaintiffs are found to be nonexempt. When an employer's records are inaccurate or inadequate, an employee who proves uncompensated work and produces sufficient evidence of its amount and extent as a matter of just and reasonable inference shifts the burden to the employer to produce evidence of the precise amount of work or to negate the reasonableness of the inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). Here, Plaintiffs rely on the cited testimony about actual work and recording problems, considered alongside SBOC's 45-hour minimum, not on the scheduling expectation alone. See 29 C.F.R. § 785.48(a). The issue for this motion is not which witness's estimate the Court should accept, but whether Dr. White has supplied a sufficient basis for treating the punches as complete in drawing his challenged conclusions. Fed. R. Evid. 702(b), (d).

**3. The narrative omits qualifications central to the duties inquiry.**

Appendix B records substantial limits on the managerial activities that Section V emphasizes. Twelve of the 22 Opt-In entries say the Store Manager could not hire without DM approval; one says yes, one says "Sometimes," and eight are blank. (Ex. 2, App. B, Sheet2, col. S.) Nine of the 14 affirmative performance-evaluation entries mention DM review or direction, and the scheduling entries contain approval, review, or scope limitations. (Ex. 2, App. B, Sheet2, cols. P–Q.) Opt-In Plaintiff Alpha Mbye's discipline entry states "SM had no authority"; Opt-In Plaintiff Susan Zaratzian's states "Could not issue warnings without approval." (Ex. 2, App. B, Sheet2, cells T11, T23.)

The significance of an employee's participation cannot be assessed without examining its limits. Relative freedom from supervision bears directly on primary duty. 29 C.F.R. § 541.700(a). Dr. White identifies participation in scheduling, evaluations, and hiring without evaluating the authority actually exercised or the importance of those activities in the job as a whole. (Ex. 1, Report at 22–24.) A tally stripped of its qualifications does not supply that analysis. Selective presentation of this kind is an unreliable application of method. *See Nix*, 2026 WL 1129097, at *6 (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 634 (4th Cir. 2018)).

Finally, calling Appendix B a summary does not excuse its unsupported counts or selective presentation. An evidentiary summary must accurately compile the material it summarizes. *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004). The Report and Appendix B should be excluded as proffered; their deficiencies are not cured by attaching a different evidentiary label.

**F. The Decertification Motion Does Not Cure the Report's Analytical Defects.**

SBOC's motion now places collective treatment before the Court. (ECF No. 121.) Dr. White repeatedly turns his analysis of hours worked into assertions that individualized inquiry is necessary and that Ms. Gbete is not typical or representative. (Ex. 1, Report at 9, 20, 24.) The objection is not the absence of the word "decertification" from his engagement description. It is that the Report does not reliably connect the measured variation to those conclusions. A procedural use for an opinion does not supply a sufficient factual basis or a reliable method. Fed. R. Evid. 702(a)–(d).

At conditional certification, the Court distinguished similarity in job requirements and pay practices from differences in time worked, wages due, and hours involved. (ECF No. 49 at 4 (citing *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011)).) That was a preliminary determination; *Romero* separately describes the more rigorous post-discovery inquiry. 796 F. Supp. 2d at 705–06. The present motion therefore challenges the Report's support for its conclusions, rather than treating the earlier certification order as dispositive.

White's ANOVA tests equality of average recorded hours, not similarity of legally material duties or pay practices. (Ex. 1, Report at 12 & n.12.) The Report does not explain why the measured differences require separate findings on classification or why variation in hours necessitates individualized assessments when records are unavailable. (Ex. 1, Report at 9, 20, 24.) Its unexplained treatment of missing and qualified answers, recording problems, and differing time periods remains defective regardless of the procedural use for which the opinions are offered. See supra § IV.E. The Court should not equate a finding of statistically significant variation with a reliable expert determination that collective adjudication is unavailable. *Joiner*, 522 U.S. at 146; Fed. R. Evid. 702(a), (b), (d).

Nor does invoking the Report on decertification authorize an expansion of the disclosed expert analysis. To the extent SBOC offers additional opinions or bases, their disclosure and timeliness must be assessed under Rules 26(a)(2)(B) and 37(c)(1), including substantial justification and harmlessness. See *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). Counsel's argument from disclosed material does not itself establish that White performed an analysis or reached an expert conclusion absent from the Report.

Plaintiffs request that the Court resolve these expert-admissibility objections before, or together with, the decertification motion and before relying on the challenged opinions. Cf. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (requiring resolution of expert-admissibility challenges critical to Rule 23 certification). Independently, White should not be permitted to instruct the jury that the law requires individualized adjudication. Whether these claims may proceed collectively is for the Court, and an expert's legal conclusion is not a substitute for the required factual and methodological analysis. *See McIver*, 470 F.3d at 562.

## V. CONCLUSION

Plaintiffs request an order excluding Dr. White's opinions and the Report, including the figures and Appendix B, from consideration on decertification and from admission at trial. The proffered work does not provide a qualified, reliable analysis of exempt status; its principal statistical comparisons concern total hours rather than primary duty; it assumes salary-basis compensation without analyzing the challenged pay practices; its overtime analysis uses the wrong statutory threshold; and its testimony compilation contains unsupported counts and lacks a reliable method. SBOC should not be permitted to present that work as expert support for its classification, to treat its salary-basis assumption as an expert finding, to elicit a previously

undisclosed exemption analysis, or to offer Dr. White's procedural conclusions concerning collective treatment. The challenged proffer fails Rules 402, 403, and 702. Plaintiffs request a ruling on these objections before, or together with, the decertification decision.

Alternatively, Plaintiffs request an order precluding reliance on the following at decertification and precluding Dr. White from offering them at trial: (1) any opinion on exempt status, primary duty, or salary-basis compliance; (2) any measure, figure, or opinion that defines overtime as hours over 45; (3) Section V of the Report and Appendix B; and (4) any opinion that individualized inquiry is necessary or that Ms. Gbete is not typical or representative.

This the 15th day of October, 2026.

Respectfully submitted,

/s/ Philip J. Gibbons Jr.
Philip J. Gibbons Jr.
N.C. State Bar No. 50276
GIBBONS LAW GROUP, PLLC
10801 Johnston Road, Suite 211
Charlotte, North Carolina 28226
Telephone: (704) 612-0038
Facsimile: 704-625-2835
Email: phil@gibbonslg.com

Evan G. Gungor
N.C. State Bar No. 60902
GIBBONS LAW GROUP, PLLC
1144 Executive Circle, Suite 220
Cary, North Carolina 27511
Telephone: (919) 706-0211
Facsimile: (704) 625-2835
Email: evan@gibbonslg.com

Gilda A. Hernandez
N.C. State Bar No. 36812
S. Byron Frazelle
N.C. State Bar No. 59771
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
215 S. Academy Street
Cary, North Carolina 27511
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
Email: ghernandez@gildahernandezlaw.com
Email: sbfrazelle@gildahernandezlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I certify that this memorandum complies with the 8,400-word limit in Local Civil Rule 7.2(f)(3)(A). The memorandum contains 6,614 words, including headings, footnotes, citations, and quotations, and excluding the case caption, signature blocks, required certificates, table of contents, table of authorities, and attachments, exhibits, affidavits, and other addenda, as provided in Local Civil Rule 7.2(f)(1). I relied on the word count generated by word-processing software, with the elements required by Local Civil Rule 7.2(f)(1) included.

October 15, 2026

/s/ Philip J. Gibbons Jr.
Philip J. Gibbons Jr.
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I electronically filed this memorandum with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record, including Phillip J. Strach, Nathaniel J. Pencook, Jordan A. Koonts, and Matthew A. Abee of Nelson Mullins Riley & Scarborough LLP, counsel for SBOC.

/s/ Philip J. Gibbons Jr.
Philip J. Gibbons Jr.